John Norman PIGG, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–88–00172.

Court of Appeals of Texas,
Beaumont.

Oct. 12, 1988.

William G. Martin, Jr., Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty. and R.W. Fisher, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

DIES, Chief Justice.

Appellant was convicted of possession of a controlled substance, methamphetamine of an aggregate weight of less than twenty-eight grams, by a jury which also assessed his punishment at fifteen years' confinement in the Texas Department of Corrections.

█ In point of error one, Appellant contends that the State produced insufficient evidence to prove that he possessed the methamphetamine. In reviewing the sufficiency of the evidence, an appellate court, viewing the evidence in the light most favorable to the verdict, *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984), must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984).

Appellant was charged under the Controlled Substances Act, which makes it an offense to knowingly or intentionally possess a controlled substance in Penalty Group 1, which includes methamphetamine. *TEX.REV.CIV.STAT.ANN. art. 4476—15, secs. 4.04(a), 4.02(b)(6)* (Vernon Supp.1988). "Possession" is defined by statute as actual care, custody, control or management. *TEX.REV.CIV.STAT.ANN. art. 4476—15, sec. 1.02(36)* (Vernon Supp.1988). Possession of a controlled substance need not be exclusive, but rather, evidence showing the accused jointly possessed the substance with another is sufficient. *Gutierrez v. State*, 628 S.W.2d 57, 60 (Tex.Crim.App. 1980). A finding of joint possession cannot be based solely on proof of mere presence at the place where contraband is found.

*Id.* There must be an affirmative link between the accused and the drug in such a manner, and to such an extent, that a reasonable inference may arise that the accused knew of the drug's existence and its whereabouts. *Id.* This link can be established by additional independent facts and circumstances which indicate the accused's knowledge of the drug as well as control over it. *Id.*

During the early morning hours of September 3, 1987, federal, state, and local peace officers executed a federal search warrant for a particular trailer house in Nederland, Texas. Appellant, his girlfriend, and another couple were sleeping in the trailer at the time of execution. The State produced evidence that Appellant owned the trailer and lived there with the other couple and "occasionally" his girlfriend. Officers discovered clothing, which would have fit only Appellant, in the closet of the bedroom in which Appellant was found sleeping. One of the officers testified that the distinctive aroma of methamphetamine was present in Appellant's bedroom at the time of the search. During the search, officers seized a brown wooden box lying on the floor of Appellant's bedroom containing a plastic bag of methamphetamine, possession for which Appellant was charged.

The evidence of Appellant's possession is sufficient to sustain the jury's verdict. Appellant owned and lived in the trailer, and the controlled substance was found in his bedroom. The fact that Appellant could clearly smell the methamphetamine was enough of an "affirmative link" to allow the jury to infer that Appellant "knew of the drug's existence and its whereabouts." *Gutierrez,* 628 S.W.2d at 60; *see also Hughes v. State,* 612 S.W.2d 581, 582 (Tex. Crim.App.1981); *Humason v. State,* 728 S.W.2d 363, 367 (Tex.Crim.App.1987). Appellant's first point of error is overruled.

■ In point of error two, Appellant asserts that the trial court committed reversible error when it refused to grant a mistrial after the State repeatedly attempted to introduce evidence of the extraneous offense of manufacture of a controlled substance. During the course of their search, peace officers found shredded aluminum foil, an Igloo cooler converted into a methamphetamine dryer and humidifier, two gallon containers of acetone and some sulphuric acid. This evidence was discovered in the closet of the room in which Appellant and his girlfriend were found,[1] and was introduced by the State as evidence that Appellant previously manufactured methamphetamine:

"Q Have you had occasion to investigate the manufacture of methamphetamine?

"A Yes, I have.

"Q And have you—how—what they call a place where this type of substance is manufactured?

"A It is generally called a clandestine laboratory.

"Q Are you familiar with the various chemical apparatus used in a clandestine methamphetamine laboratory?

"A Yes, I am.

"Q Have you had actual experience—"

Appellant's objection at this point on grounds of relevance was sustained and the jury was instructed to disregard the State's question. Appellant did not request a mistrial. The State continued its questioning on other topics, then asked:

"Q State's Exhibit No. 21, where is that?

"A That is showing the closet in the [bedroom where Appellant was found].

"Q Now based on your experience as a narcotics officer who has investigated methamphetamine, you see anything in here that you find significant?

"A Yes, I do.

1. Unlike *Martin v. State,* No. 09–83–118 CR (Tex.App.—Beaumont Sept. 28, 1988, no pet.) (opinion on remand), this evidence was adequately connected to Appellant. It was found in a closet containing clothes which would fit Appellant but not the other male occupant of the trailer house.

"Q Would you point that out to the jury.

"A The paper sack here contained shredded aluminum foil, which is used in the manufacture of—"

The trial court overruled Appellant's objection on relevance grounds, on grounds that it violated Appellant's *TEX.R.CRIM.EVID. 404(b)* motion which the trial court had granted, and on grounds that the answer constituted evidence of an extraneous offense. Appellant's counsel also asked for a mistrial, which was denied. The State continued as follows:

"Q Now you say aluminum foil used in the manufacture of methamphetamine?

"A It is, yes.

"Q Do you know from your personal experience as an investigator what part of the process it is used in?

"A Yes.

"Q Would you tell the jury.

"A After the manufacture of phenylacetone, or PTP, which is—"

The trial court sustained Appellant's objection at this point, instructed the jury to disregard the question, but denied Appellant's motion for mistrial. The State then "retract[ed] the question." The State resumed questioning on another topic, but returned to the topic of manufacturing:

"Q State's Exhibit No. 25, is this the same closet?

"A Yes, it is.

"Q This show anything further that is not shown in the other photograph?

"A There was a blanket that was removed that covered two gallon cans of acetone and some sulphuric acid.

"Q Is sulphuric acid and acetone used to manufacture—"

Appellant's objection at this point was again sustained, the jury instructed to disregard the question and answer, but Appellant's motion for mistrial was denied. Again, the State "retract[ed] the last question."

Concerning the first line of questioning of which Appellant complains, the State elicited information on clandestine labs generally and the witness's qualifications as an expert, rather than invoking evidence connecting this Appellant to a specific act. Although the line of questioning at that point was not relevant, it was not such that the court's instruction could not have withdrawn the impression from the jury's mind. *Gonzales v. State*, 685 S.W.2d 47 (Tex. Crim.App.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985).

Turning to Appellant's second objection, knowledge, or criminal intent, is an essential element of the crime of possession of a narcotic drug. *Arnott v. State*, 498 S.W.2d 166, 176 (Tex.Crim.App.1973). Evidence which tends to show knowledge is a relevant part of the State's case in chief and is admissible even though that evidence may show the accused committed another crime. *Id.* at 176–77. In analyzing the prejudicial effect of such extraneous offenses, the Court of Criminal Appeals admonished courts that such extraneous offenses only be admitted in cases in which the state relies on circumstantial evidence, *i.e.*, evidence from which knowledge cannot be readily inferred. *Id.* at 177.

Under the *Arnott* standard, the State, for several reasons, was entitled to introduce some of the evidence confiscated from Appellant's closet which tended to show he had previously manufactured methamphetamine. First, that evidence tended to show Appellant knew the white powder was contraband. *Id.; see also TEX.R.CRIM. EVID. 404(b).* Secondly, the prejudicial effect of a limited amount of such evidence does not outweigh the State's need to introduce such evidence in order to carry its burden of proving knowledge since it could not have been readily inferred that Appellant knew the nature of the substance he possessed. *Arnott*, 498 S.W.2d at 177. In addition, although Appellant's 404(b) motion was granted and although the State gave no notice of its intent to use the offense in its case in chief, the evidence arose from the same transaction and, thus, was not rendered inadmissible under 404(b) notice requirements. *TEX.R.CRIM.EVID. 404(b).* For these reasons, the trial court was correct in overruling Appellant's second objection.

Appellant's fourth objection was to a question which was never answered; thus, no additional evidence of an extraneous offense was actually admitted. In addition, the court instructed the jury to disregard the question, and the question was withdrawn by the State's attorney. Appellant's third objection was to an uncompleted answer by the witness about how shredded aluminum foil was used in the process of manufacturing methamphetamine. This, too, the court instructed the jury to disregard, and the State withdrew the question. An error in asking an improper question or in admitting improper testimony may generally be cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression on their minds. *Gonzales*, 685 S.W.2d at 47. This question and partial answer were not of such a character that the court's instruction could not have withdrawn their impressions from the jury's mind.

Also, Appellant specifically does not complain on appeal of the following, equally damaging testimony elicited by the State:

"Q No. 22, would you please describe to the jury what you found in here.

"A It is an Igloo cooler fashioned as a methamphetamine dryer and dehumidifier.

"[DEFENSE COUNSEL]: Again I'm going to object to the testimony of Officer Billingsley to continue going into an extraneous matter.

"THE COURT: OVERRULED."

Point of error two is overruled and Appellant's conviction affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I completely concur in the affirmance. I do not want to be understood to condone any counsel continuing to return to a subject, in this case the manufacture of methamphetamine, in light of a judge sustaining repeated objections to the line of questioning. If counsel believes there is a legal basis for the line of questioning, the judge should be apprised of the basis and given a full opportunity to make an informed decision. A lawyer who continues to attempt "end runs" does no service to the bench or the bar.