Kenneth Alan NOLEN A/K/A Kenneth Allen Nolen, Appellant,

v.

The STATE of Texas, State.

No. 2–92–218–CR.

Court of Appeals of Texas, Fort Worth.

March 8, 1994.

Rehearing Overruled April 26, 1994.

David A. Pearson, IV, Fort Worth, for appellant.

Amy Ayers Adams, Dist. Atty., Donald E. Schnebly and David W. Vernon, Asst. Dist. Attys., Weatherford, for state.

Before LATTIMORE, DAY and FARRAR, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Kenneth Alan Nolen, also known as Kenneth Allen Nolen, was convicted by a jury of the offense of aggravated possession of a controlled substance, namely amphetamine of 400 grams or more. *See* TEX.HEALTH & SAFETY CODE ANN. §§ 481.-102(6), 481.115 (Vernon 1992). The jury assessed punishment at ninety-nine years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $100,000 fine. On appeal, Nolen raises four points of error contending that: (1) the trial court erred and abused its discretion when it failed to conduct the balancing process required by a timely rule 403 objection to the admission of extrinsic offense evidence; (2) the trial court erred and abused its discretion by admitting into evidence during the State's case in chief extrinsic offense evidence against Nolen; (3) the trial court erred by not conducting an in-camera hearing to determine whether an informant's identity should have been revealed to Nolen; and (4) the evidence was insufficient to warrant a finding of guilty as alleged in the indictment.

We reverse and remand to the trial court for a new trial.

At 6:00 a.m. on January 7, 1992, police officers executed a search warrant on the house at 907 Van Winkle Street in Weatherford. Michael Adams, the owner of the house, was found lying on a couch in the living room. Nolen and Kathryn Robinson were found sleeping on the bedroom floor, naked, four to five feet from the bathroom. Robinson testified that she and Nolen left her mother's house and went to Adams' house for privacy, to engage in sexual intercourse.

The officers smelled a strong chemical odor in the house, an odor that is normally associated with an amphetamine lab. In the bathroom adjacent to the bedroom where Nolen was found, the officers discovered a drug lab. More than 400 grams of amphetamine were found in the drug lab. Two of Nolen's fingerprints were found on the drug lab equipment: one on the condenser tube and one on the propane cylinder.

Nolen was arrested and charged with the offense of which he was convicted. At trial, the State put on evidence of a previous conviction over Nolen's objection. The conviction was for burglary of a building, the Hood County Sheriff's property shelter, on February 7, 1989. In that conviction, Nolen was charged with stealing, among other items, glassware said to be typically used in the manufacture of amphetamine drugs.

In his fourth point of error, Nolen urges that the evidence was insufficient to support his conviction. Nolen argues that the evidence was insufficient to affirmatively link him to the contraband; consequently, he was not shown to have had knowledge of or control over the amphetamine.

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The standard of review is the same for direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991).

■ The elements of the crime of possession of a controlled substance include: (1) care, control, and management over the controlled substance; and (2) knowledge by the accused that the substance possessed was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988). To show possession of contraband when the defendant is not in exclusive control or possession of the premises where the contraband is seized, the State must present additional independent facts that affirmatively link the defendant to

the contraband. *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Crim.App. [Panel Op.] 1981); *Patterson v. State,* 723 S.W.2d 308, 311 (Tex. App.—Austin 1987), *aff'd,* 769 S.W.2d 938 (Tex.Crim.App.1989). The affirmative link can be established by showing additional facts and circumstances that indicate the accused's knowledge and control of the contraband. *Pollan,* 612 S.W.2d at 596.

■ Some of the independent facts and circumstances that may be presented include the following: whether the accused was present at the time of the search, *Damron v. State,* 570 S.W.2d 933, 936 (Tex.Crim.App. [Panel Op.] 1978); whether the contraband was in close proximity and readily accessible to the accused, *Earvin v. State,* 632 S.W.2d 920, 924 (Tex.App.—Dallas 1982, pet. ref'd); whether the contraband was in plain view of the accused, *Patterson,* 723 S.W.2d at 311; whether the accused's fingerprints were found on incriminating items associated with the controlled substance, *Oaks v. State,* 642 S.W.2d 174, 178 (Tex.Crim.App.1982); and whether there was odor commonly associated with contraband present, *Pigg v. State,* 760 S.W.2d 330, 331 (Tex.App.—Beaumont 1988, no pet.).

■ Because Nolen did not own the house in which he was arrested, the State had the burden of introducing other facts linking Nolen to the amphetamine. The evidence presented by the State, including the fact that the amphetamine lab may have been in plain view of the spot where Nolen was found, Nolen's proximity to the lab, Nolen's fingerprints on the glassware used in the lab, and the odor of amphetamine in the house, was sufficient to allow the jury to find the essential elements of the crime beyond a reasonable doubt. We overrule Nolen's fourth point of error.

Nolen complains in his first and second points of error that the trial court erred by failing to conduct a rule 403 balancing test and abused its discretion by its admission of extrinsic offense evidence against him. At trial, Nolen objected that the extraneous offense evidence was not admissible under rule 404(b) of the Texas Rules of Criminal Evidence. He further objected that the prejudi-

cial effect of the evidence outweighed the probative value.

■ A defendant should be tried only on the accusation made in the State's pleading and not on a collateral crime. TEX.R.CRIM. EVID. 404(b); *Nobles v. State,* 843 S.W.2d 503, 514 (Tex.Crim.App.1992). Extraneous offense evidence that is not relevant apart from supporting an inference of character conformity is absolutely inadmissible. TEX. R.CRIM.EVID. 404(b). However, evidence of other crimes, wrongs, or acts may be admissible if it has relevance *apart from* its tendency to prove that a person acted in conformity with his character; for example, this type of evidence may be used to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (opinion on reh'g). Once an objection to the admission of extraneous offense evidence has been lodged, the proponent of the evidence must persuade the trial court that the extraneous matter has relevance to issues such as those delineated in rule 404(b), or the proponent may justify admission on other grounds. *Id.* at 387–88.

■ When the trial court has determined that the evidence may be admitted under rule 404(b), the opponent of the evidence must further object that the evidence will unfairly prejudice the opponent, based upon rule 403. *Id.* at 388. The approach under rule 403 is to admit relevant evidence unless its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.* at 389; *Crank v. State,* 761 S.W.2d 328, 342 n. 5 (Tex.Crim.App. 1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). Thus, the presumption is that the relevant evidence will be more probative than prejudicial. *Montgomery,* 810 S.W.2d at 389.

■ When a rule 403 objection is made, the trial court must engage in a balancing process. *Id.* The court should ask the proponent to articulate his need for the evidence and ask the opponent to state what prejudice will occur. *Id.* Factors that the trial court should consider in the balancing

include: (1) the inherent probativeness of the evidence; (2) the potential that the extraneous offense will impress the jury in some irrational but indelible way; (3) the amount of trial time that the proponent uses to develop evidence of the extraneous offense; and (4) the proponent's need for the extraneous offense evidence. *Id.* at 389–90. The appellate standard of review of both the rule 404(b) and the 403 rulings is abuse of discretion. *Id.* at 390.

■ By his first point of error, Nolen asserts that the trial court abused its discretion by failing to conduct a balancing test after a timely rule 403 objection that the extraneous offense evidence was more prejudicial than probative. The trial court did hold a hearing on the admissibility of the prior offense evidence. During the hearing, the trial judge made the statement that he believed the extraneous offense evidence was relevant. Following that determination, there was some discussion comparing the probativeness of the evidence versus the danger of unfair prejudice. There was discussion of the probativeness of the evidence and Nolen's trial counsel questioned the State's need for the extraneous offense evidence.

■ There is no requirement that the trial court announce for the record that it has conducted and completed the balancing test in its own mind. *Houston v. State*, 832 S.W.2d 180, 184 (Tex.App.—Waco 1992), *pet. dism'd, improvidently granted per curiam*, 846 S.W.2d 848 (Tex.Crim.App.1993). The fact that a trial judge made a proper balancing test can be implied from the record. *Duckworth v. State*, 833 S.W.2d 708, 710–11 (Tex.App.—Beaumont 1992, no pet.). While the record does not contain a direct discussion by the court of its balancing, we presume the court did perform the mandatory balancing test. We overrule Nolen's first point of error.

■ Nolen urges in his second point of error that the trial court erred in determining that the extraneous offense evidence was relevant and thus admissible under rule 404(b). As stated above, one of the elements of possession of a controlled substance is knowledge by the accused that the substance

possessed was contraband. *See Simpson v. State*, 709 S.W.2d 797, 801 (Tex.App.—Fort Worth 1986, pet. ref'd) (opinion on reh'g). Evidence which tends to show knowledge is a relevant part of the State's case in chief and is admissible even though that evidence may show the accused committed another crime. *See Arnott v. State*, 498 S.W.2d 166, 176–77 (Tex.Crim.App.1973) (opinion on reh'g); *Pigg*, 760 S.W.2d at 332. The State argues that evidence of the extraneous offense, burglary of a building, was proper because it was relevant to show Nolen's "guilty knowledge."

The earlier offense, burglary of the Hood County Sheriff's property bunker, occurred thirty-six months prior to Nolen's arrest. Nolen was convicted for burglary of a chain saw, stereo speakers, VCRs, a television set, tools, tool boxes, and glassware now said to be of a type commonly used in the manufacture of illicit drugs.

The State asks us to affirm the relevance of the prior offense based on a series of assumptions. First, the State says the fact that Nolen took glassware commonly used in the manufacture of amphetamine "makes it highly unlikely that [Nolen] coincidentally selected these items by random chance." Based on that assumption, the State says "[a] strong inference is raised that [Nolen] had knowledge of the contraband amphetamine and its production." At that point, the State says this is relevant "in that it shows that [Nolen] had knowledge of possessing contraband in the offense charged," a near meaningless phrase.

This chain of inferences is too attenuated. The first offense was too dissimilar and too far removed in time to be relevant for the purpose of proving Nolen's "guilty knowledge." By no reasonable perception of common experience can it be concluded that a burglary conviction has a tendency to make more or less probable the fact that Nolen knew what amphetamine was and knew that it was a controlled substance. *See Montgomery*, 810 S.W.2d at 391. Absent a showing that Nolen actually had experience with amphetamine itself, the prior burglary offense was not relevant to prove that Nolen had knowledge that the substance being pro-

duced in Adams' bathroom was amphetamine. We hold that the trial court abused its discretion by allowing the evidence to be presented.

 Having determined that there was error in the trial court's decision to admit the extraneous offense evidence, we must now determine harmfulness under rule 81(b)(2) of the Rules of Appellate Procedure. *See id.* There is no formula by which we can perform a harmless error analysis but, generally, we first isolate the error and its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *See Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App. 1989). If we are unable to determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment, we must reverse the conviction. *Id.* at 584.

 We are unable to determine beyond a reasonable doubt that the error of allowing evidence of Nolen's prior burglary conviction did not contribute to Nolen's conviction or punishment. We sustain point of error number two.

 Even if we accepted the State's chain of assumptions to find relevance, we also hold that the trial court's ruling was in error because it was an abuse of discretion to determine under rule 403 that evidence of the prior conviction was more probative than prejudicial. The appellate court's approach in reviewing a rule 403 decision is to measure the trial court's ruling against the relevant criteria by which a rule 403 decision is to be made. *Montgomery,* 810 S.W.2d at 392. Where relevant criteria, viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence, we must declare that the trial court erred in failing to exclude it. *Id.* Factors to be considered in the 403 balancing process were listed above.

The first factor a trial court should consider is the inherent probativeness of the evidence. The probativeness of the evidence "is often, although by no means invariably, a function of the similarity of the extraneous transaction to the charged offense." *Id.* at

390. The only similarity we see between the prior offense and the possession offense is that glassware was involved in each of the incidents. This slight similarity is not enough to justify the admission of the extraneous offense evidence.

The second factor given in *Montgomery* as a consideration in the 403 balancing process is the potential that the extraneous offense will impress the jury in some irrational but indelible way. *Id.* The extraneous offense had a great potential to influence the jury in an irrational way in this trial. Indeed, the prosecutor argued in closing that "it's a reasonable *deduction* from the evidence that that man is so daring to take lab equipment from the Hood County Sheriff, he certainly knows about amhetamine [sic] and the equipment used to produce amphetamine." [Emphasis added.] It is not a reasonable deduction that a man who steals glassware certainly knows the characteristics of a particular chemical compound that may be produced with that type of glassware. However, the jury may have irrationally come to that conclusion, especially since the deductions seem to have been presented as an integral part of the State's case, and because the State sought to emphasize the brazen character of burglarizing the sheriff himself.

Thirdly, the amount of trial time that the proponent uses to develop evidence of the extraneous offense should be considered. *Id.* This factor does not weigh strongly in either direction because little time was expended to introduce the extraneous offense evidence.

The fourth consideration is the proponent's need for the extraneous offense evidence. *Id.* The State argues that it needed this evidence to raise a strong inference that Nolen had guilty knowledge of amphetamine and its production. As stated above, we doubt the strength of the inference drawn. Further, this extraneous offense evidence is but one of several pieces of circumstantial evidence introduced by the State to support this inference. The State's need for this evidence did not outweigh the danger of unfair prejudice to Nolen.

Assuming, arguendo, that this extraneous offense evidence is relevant in light of the

*Montgomery* factors, the trial court's decision that it was not outweighed by the danger of unfair prejudice went beyond the trial court's "limited right to be wrong." *See id.* at 391. We hold that it was an abuse of discretion to determine that the extraneous evidence of burglarizing the sheriff's evidence shelter was not substantially outweighed by the danger of unfair prejudice to Nolen, confusion of the issues, and misleading the jury.

Because of our holding on point of error number two, we need not address point of error three.

The judgment of the trial court is reversed and the cause is remanded for a new trial.