**Thaddeus MOYER, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–96–546–CR.

Court of Appeals of Texas,
Fort Worth.

July 3, 1997.

Rehearing Overruled Aug. 7, 1997.

Allan K. Butcher, Allan K. Butcher, Jr., Daniel McBride, Elizabeth Berry, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles Mallin, David M. Curl, Brad Clark, Steve Wells, Assistant Criminal District Attorney, Fort Worth, for State.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

A jury found Appellant Thaddeus Moyer guilty of aggravated kidnapping. *See* TEX. PENAL CODE ANN. § 20.04 (Vernon 1994 & Supp.1997). The jury heard evidence that Appellant kidnapped the female victim at gunpoint one night and took her to his home, where he forced her to submit to beatings, rape, and other sexual abuse by him and his wife. Appellant kept the victim nude and bound in a locked closet. She escaped the next day by starting a fire in the closet and, while still inside the house, she telephoned 911 for help. Police and medical personnel responded. The jury sentenced Appellant to life in prison, and he appeals. We affirm.

Appellant presents seven points of error, five of which allege that he was convicted upon inadmissible hearsay evidence that the trial court allowed the jury to consider. Appellant contends that the inadmissible hearsay included statements (1) that the victim made to a paramedic who was dispatched to the fire and wrote what the victim said in a report that was admitted in evidence as a business record; (2) that the victim made and that the doctor recorded on a physician's questionnaire about the sexual assault that was admitted as a business record; (3) that the victim made when she identified Appellant for police at the crime scene; (4) that the paramedic made when he testified about his "understanding" of what had happened to the victim (also challenged as cumulative); and (5) that the paramedic made when he testified about what the victim had told him about the origin of her wounds. In addition, Appellant protests (6) that the trial court erred by admitting into evidence magazines the police found at his home that were not only irrelevant to the issues of aggravated kidnapping, but were highly prejudicial because they depicted nude women. Last, Appellant submits (7) that the prosecutor's closing argument on punishment was improper because the argument suggested extraneous offenses by asking the jury to consider who might be Appellant's next victim and by imploring jurors to impose punishment at the high end of the range available.

### Police and Medical Help

The house was engulfed in flames when police officer Gabriel Barrera arrived on the afternoon of September 5, 1994 and saw Appellant's wife and the nude victim struggling in the front yard. When Officer Barrera put the victim in his patrol car, Appellant's wife fled, although the officer ordered her not to leave. J.B. Causseaux, an emergency medical technician, arrived at the scene in a Medstar ambulance. The victim was placed inside the back of the ambulance and eventually was taken to John Peter Smith Hospital, where police officer Lori Scheiern talked to her and photographed her injuries. The victim was examined at the hospital by a resident physician, Dr. Charles Gibson.

### The Paramedic's Evidence

Points of error one, four, and five challenge the paramedic's testimony, so we will consider those points together. In point of error one, Appellant asserts that the trial court erred by allowing the jury to consider State's exhibit 67 as a business record exception to the rule against hearsay evidence. The exhibit is a report written by Mr. Causseaux. When Mr. Causseaux arrived at the scene, the victim was already in Officer Barrera's police car, "very distraught" and nude. They wrapped her in a sheet and placed her on a cot inside the ambulance. Mr. Causseaux recorded the victim's vital signs at about 4:40 p.m.

Mr. Causseaux identified State's exhibit 67 as the "incident report" that he wrote while in the ambulance with the victim. The report's purposes are to enable the ambulance paramedics to assess a patient's injuries and to facilitate diagnosis and treatment. The report form has several sections, including one for the patient's name, address, occupation, and related information. Another section is where the paramedic writes the "subjective" information that a patient tells the paramedic about the current injury or illness as well as past medical history. A different section is provided for the paramedic to enter

"objective" information, the paramedic's own observations of the patient's condition. Separate sections of the form are for the paramedic to enter a paramedical "assessment" of the patient, to record the patient's "vital signs," and to write a paramedical "plan" for the patient's emergency treatment.

Mr. Causseaux testified that during his interview with the victim in the ambulance, he wrote the information about her that is in each section of the report.

■ Exhibit 67 was admitted in evidence as a business record, over Appellant's objection that "it contains hearsay within hearsay and, secondly, that it's cumulative or repetitive." When the prosecutor asked what part of the report was hearsay, Appellant's counsel responded, "[t]he document itself is hearsay and it contains hearsay of what the victim told him." Point of error one challenges the admissibility of exhibit 67 only on the ground of hearsay. Whether evidence is admissible as an exception to the rule against hearsay is a question for the trial court to resolve, reviewable only under an abuse of discretion standard. *See Coffin v. State,* 885 S.W.2d 140, 149 (Tex.Crim.App.1994). That means that the trial court's decision on admissibility will not be disturbed if it was within the realm of reasonableness on the facts presented to that court. *See Powell v. State,* 898 S.W.2d 821, 826 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 524, 133 L.Ed.2d 431 (1995).

■ About the incident report, Mr. Causseaux testified that he is a paramedic for Medstar, that the incident report is a record made and kept in the course of Medstar's regularly conducted business activity, that it was his regular practice to make that type of report, that he wrote the report at or near the time he treated the victim, and that he wrote some of the entries with personal knowledge of the information recorded and that he wrote the other entries as they were related to him by the victim, a person with knowledge of those matters. His testimony furnished the proper foundation and qualified exhibit 67 as a business record, admissible as an exception to the hearsay rule. *See* TEX. R.CRIM. EVID. 803(6). We also recognize that when a patient makes statements for purposes of medical diagnosis or treatment and describes medical history, present symptoms, pain, or sensations, or the inception or external source thereof insofar as reasonably pertinent to diagnosis or treatment, those statements are admissible as exceptions to the hearsay rule. *See* TEX.R.CRIM. EVID. 803(4). The trial court reasonably may have concluded that the "subjective" statements of the victim as recorded in the report were admissible under Rule 803(4).

■ Point of error four is a complaint that by allowing the paramedic to tell the jury his "understanding" of the medical complaints the victim related to him in the ambulance, the trial court allowed the jury to hear evidence that was both inadmissible hearsay and cumulative. Point of error five asserts that by allowing the paramedic to tell the jury what the victim told him in the ambulance about the origin of her wounds, the trial court allowed the jury to consider inadmissible hearsay. The testimony targeted by points four and five is the same; it is the paramedic's testimony when he was allowed to read to the jury the following "subjective" entries that he recorded in exhibit 67 while interviewing the victim in the ambulance:

> The patient's chief complaint was pain in the vaginal area, the lower abdomen, both wrists, both ankles, her eyes and jaws and both breasts.

> The patient states she had been tied up in a closet since 0200 hours or 2 a.m., this date being the date of the incident. Patient was bitten numerous times on both breasts, the back, and vagina.

> Patient was struck in the face several times with a closed fist. Also used a whip across the buttocks. Patient had some loss of consciousness.

> Patient was tied up with duct tape and cord and ace wraps.

> She has a history of arthritis, takes Motrin, and has no medical—drug allergies.

Mr. Causseaux testified that the "subjective" information was consistent with his own observations, and that when the victim was placed in the ambulance, she still had duct tape around her eyebrow area and "all the way around" her head, including the mouth,

and still had cords and wraps around her wrists and ankles. Because the victim was found bruised, battered, and nude while struggling with Appellant's wife in the front yard of a home that was on fire, the trial court reasonably may have concluded that her remarks to the paramedic were admissible under the "excited utterances" exception to the hearsay rule. *See* Tex.R.Crim. Evid. 803(2).

The trial court did not abuse its discretion by admitting the Medstar business report in evidence, and we overrule points of error one, four, and five.

### The Physician's Evidence

Point of error two attacks the admission into evidence of answers the victim made in the sexual assault questionnaire used by Dr. Charles Gibson when he examined her at John Peter Smith Hospital about 8:00 p.m. on September 5, 1994. Dr. Gibson examined the victim about three hours after the paramedic had assisted her at the scene of her escape from the burning house. Dr. Gibson testified that the victim was still very distraught, crying, tearful, and upset. Police officer Lori Scheiern, who photographed the victim at the time of the doctor's hospital examination, had already testified that the victim "appeared to be very traumatized. Her speech was somewhat hesitant and disjointed and she was crying intermittently between the time that she would try to talk and tell me what happened." The officer's photographs, State's exhibits 46 through 59, were admitted in evidence.

■ The questionnaire was admitted as part of the victim's complete record of her stay at John Peter Smith Hospital. That record is State's exhibit 75, which is properly certified as a business record of the hospital in an attached affidavit signed by the hospital's custodian of the records. *See* Tex. R.Crim. Evid. 803(6). On direct examination, Dr. Gibson agreed that the questionnaire within that record is "a standardized form, that's used by all physicians on these sexual assault exams." Based upon the doctor's testimony about the victim's agitated emotional state at the time he examined her, and the police officer's similar testimony, the trial

court may reasonably have concluded that her answers to the questionnaire were admissible under the "excited utterance" exception to the hearsay rule. *See* Tex.R.Crim. Evid. 803(2).

The questionnaire is in a form dated September 5, 1994 and is signed by the victim on a page entitled "Request for Medical Examination, Treatment, Collection of Forensic Evidence, and Release of Medical Records." The form's next page is entitled "Forensic Specimen Collection Check–Off Form." Its following page is entitled "Sexual Assault Examination and Forensic Report Form" and contains these following instructions to prompt the person conducting the medical examination:

> HISTORY OF ASSAULT TO AID IN CONDUCTING EXAM (Patient's description of pertinent details of assault— oral/rectal/vaginal penetration; digital penetration or use of foreign object; oral contact by assailant/patient; ejaculation and location of such, if known by patient.)
>
> Date of Assault _____, Time of Assault _____, Number of Assailant(s) _____, Sex of Assailant(s) _____, Race of Assailant(s) _____

The instructions are followed by a series of questions for the medical examiner to ask the patient, and the form provides for the patient's answers to be recorded on it by the examiner. The form has additional pages detailing the patient's condition as revealed by the medical examination and is signed by Dr. Gibson.

■ Appellant protests in point of error two that the form is a hospital business record that contains hearsay statements of the victim, who is not a part of the hospital's business. Nevertheless, many if not most of the victim's statements that are recorded in the form were made to the physician for the purposes of medical diagnosis or treatment and are admissible as an exception to the hearsay rule. *See* Tex.R.Crim. Evid. 803(4). In his trial objection, Appellant did not distinguish between statements that were legally admissible and those that were not. Without this distinction, neither a trial court nor an appellate court is obligated to sort the

statements out. *See Jones v. State*, 843 S.W.2d 487, 492–93 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

The trial court did not abuse its discretion by admitting in evidence the physician's questionnaire about sexual assault. We overrule point of error two.

### Identifying the Appellant

Officer Barrera testified that when he was in the back of the ambulance with the victim, he had another officer bring Appellant's wife, Karen Moyer, to stand outside the ambulance where the victim could see her. The victim identified Karen Moyer as "the person who had raped her or helped rape her." Then an officer brought Appellant, who was not handcuffed, to stand where the victim could see Appellant through the ambulance window. She identified Appellant as her attacker. Point of error three asserts that the trial court erred by overruling Appellant's timely hearsay objection when Officer Barrera first testified that the victim identified Appellant at the scene. However, Officer Barrera later testified again about the victim's identification of Appellant from the ambulance, and Appellant did not object.

 Error is waived if not preserved by a timely objection that is ruled on by the trial court. *See Mack v. State*, 872 S.W.2d 36, 38 (Tex.App.—Fort Worth 1994, no pet.). Because an error in the admission of evidence is cured if the same evidence comes in elsewhere without objection, the general rule is that the party wishing to complain must continue to object each time the evidence is offered. *See id.* Moreover, the victim in this case also testified, with no objection by Appellant, that when she was in the ambulance she identified both Appellant and the woman who had attacked her. A statement is not hearsay if the declarant testifies at trial, subject to cross-examination, and the statement is about the declarant's identification of a person after first perceiving that person. *See* TEX.R.CRIM. EVID. 801(e)(1)(C); *Miller v. State*, 843 S.W.2d 265, 267 (Tex. App.—Fort Worth 1992, no pet.). Appellant did not preserve error about the officer's testimony that the victim identified Appellant

at the scene. We overrule point of error three.

### The Magazines

Out of the jury's presence, the prosecutor offered as evidence State's exhibits 20 through 28 and 29A through 29F. Each exhibit was a partially burned or water-damaged magazine depicting nude women and each magazine had been found in Appellant's house after the fire. The trial court admitted the magazines into evidence over Appellant's objections that the magazines were not relevant, and that their probative value was substantially outweighed by the danger of unfair prejudice to Appellant, and that the magazines were an attempt by the State to show Appellant's involvement in extraneous offenses. *See* TEX.R.CRIM. EVID. 401, 402, 403, 404(b). When the magazines were admitted into evidence in the jury's presence, Appellant renewed his objections, to no avail. Point of error six complains that the trial court's ruling was error because the magazines were highly prejudicial to Appellant and irrelevant to the issue at trial.

 The victim testified that she started the fire inside the closet where she was a prisoner. It is the closet from which the police retrieved the magazines after the fire. The State offered the magazines for their relevance to the issue of Appellant's intent to kidnap and sexually abuse the victim. The State suggested a circumstantial correlation between the victim's age and the apparent ages of many of the nude women depicted in the magazines. Because Appellant is younger than the victim and younger than the pictured women appear to be, the State suggested that Appellant was attracted to women older than he. Because intent is an intangible, it can only be proved by circumstantial evidence. *See Arnott v. State*, 498 S.W.2d 166, 177 (Tex.Crim.App.1973) (op. on reh'g); *Darby v. State*, 922 S.W.2d 614, 620 (Tex.App.—Fort Worth 1996, pet. ref'd). Circumstantial evidence that tends to prove an issue or that is a link in the chain of proof is relevant even though, standing alone, it might not justify a verdict. *See Darby*, 922 S.W.2d at 620. Evidence that influences facts that concern ultimate determination of

guilt is "relevant." *See id.* The magazines are not contraband, and their possession is neither unlawful nor evidence of extraneous offenses. *See id.* at 619, 621. We will not disturb the trial court's ruling that the magazines were relevant.

We may presume that the trial court admitted the magazines into evidence after determining that their probative value substantially outweighed the danger of unfair prejudice to Appellant. *See id.* at 622; *Nolen v. State,* 872 S.W.2d 807, 812 (Tex.App.—Fort Worth 1994), *pet. ref'd,* 897 S.W.2d 789, 790 (Tex.Crim.App.1995). The trial court was not required to announce for the record that it has completed the balancing test in its own mind, but we may imply from the record that a proper balancing test was done. *See Nolen,* 872 S.W.2d at 812.

Although Appellant objected to the admission of the magazines, Appellant did not object while Officer Barrera testified in answer to the prosecutor's questions about the *content* of the magazines. A party desiring to complain about particular evidence must object each time that evidence is offered, else the objection is waived. *See Mack,* 872 S.W.2d at 38. We overrule point of error six.

### Jury Argument

Under point of error seven, Appellant argues that the prosecutor's final argument at the punishment phase of the trial invited the jury to consider extraneous offenses by asking the jurors to speculate about who might be the next victim as they considered whether to assess punishment at the low or high end of punishment range for Appellant's offense. The prosecutor's contested remarks were:

> I'm not going to stick the pictures of [victim's name] in front of you, you've already seen them. But let me ask you a question. When you consider between five to life, who's going to be the next [victim's name]? Do you know?

Appellant's objection on grounds of speculation and extraneous offenses not yet proved was overruled, and the prosecutor continued without further objection from Appellant:

> Ladies and gentlemen, I would submit to you that we have shown you beyond any reasonable doubt what this man has engaged in leads you to one conclusion, that he poses the most vile danger to this community imaginable.

> How could any of you go to sleep at night wondering whether he was on the street? Who is going to be next? ...

> Are you going to take the risk?

Initially, we note that the prosecutor's remarks are a proper plea for law enforcement. *Compare Starvaggi v. State,* 593 S.W.2d 323, 328 (Tex.Crim.App.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137 (1980) ("I hope [defendant] doesn't come knocking on one of your doors at eight o'clock in the evening" held a proper plea for law enforcement); *DeBolt v. State,* 604 S.W.2d 164, 169 (Tex.Crim.App. [Panel Op.] 1980) ("[w]hat I'm mainly concerned with is [defendant] is not out among the public, living next door to me or next door to you or anybody else"); *Long v. State,* 820 S.W.2d 888, 894–95 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) (argument "they don't do it once" was proper reference to what might happen in the future).

Moreover, we perceive no substantive difference between the objected-to argument and the argument that met no objection. Where the same objected-to argument is presented elsewhere during trial without objection, no reversible error exists. *See McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). We overrule point of error seven.

### Conclusion

After careful consideration, we have overruled all points of error. We affirm the trial court's judgment.