TOBAR V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-455-CR

BALTAZAR TOBAR APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362
ND
 DISTRICT COURT OF DENTON COUNTY, TEXAS

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  INTRODUCTION

A jury found Appellant, Baltazar Tobar, guilty of sexual assault of a child, and assessed punishment at three and one-half years’ confinement.  In one point, Appellant complains that the trial court erred when it admitted extraneous offense evidence without first performing the balancing test required by rule 403 of the Texas Rules of Evidence to determine whether the evidence’s probative value was substantially outweighed by its unfairly prejudicial effect.  
See
 
Tex. R. Evid
. 403.  We affirm.

II.  BACKGROUND FACTS

Appellant was charged with sexual assault of R.S., a child younger than seventeen years of age, on or about July 3, 2001.  At the time of the offense, Appellant was thirty-nine years old and the complainant was fifteen years old.  At trial, the evidence consisted of the testimony of R.S., her mother, and the investigating police officer.  R.S. lived in an apartment complex with her mother and brother.  Appellant often visited a friend of his who lived across the hallway.  R.S. testified as to the events that unfolded in the spring and summer of 2001.  

While Appellant was working on his friend’s car one day in May, he approached R.S. while she was sitting on her back porch reading, and they began talking.  Appellant asked if he could call her.  R.S. declined because she knew her mother would not like it since he was “older.”  She testified she did not know Appellant’s age but believed he was twenty-six or twenty-seven years old.  Appellant gave her his home, work, and cell telephone numbers and told her to call him.  Thereafter, when he would visit his friend, Appellant and R.S. would talk and “flirt” when her mother and brother were not around.

A few days later, while her mother was gone, R.S. called Appellant.  In the conversation, she told him she was only fifteen years old.  Over the next couple of weeks, she called him on several occasions and they would talk when her mother was at work or when she was at a friend’s or her grandmother’s home.  On June 16, R.S. met Appellant at a mall, where they walked around for about two hours.  Appellant continued to talk to R.S. when she was outside her apartment, and they continued their telephone conversations.  Appellant would compliment her and make her feel special, and eventually broached the subject of wanting sex with her.

R.S. and Appellant decided that he would come over one night while her mother was at work.  On the evening of July 3, 2001, after her mother had left for her night shift as a nurse, Appellant came over and parked his car outside the apartment.  R.S. slipped out the back door so her brother would not know and sat on Appellant’s car, and they talked and “made out” for a couple of hours.  He began to rub her back and legs and to kiss her neck, and he again started talking about sex and wanting to make love to her.  She felt uncomfortable and, at first, told him “no.”  After about another hour, he looked into the laundry room and suggested that they go inside it.  They walked in and he turned off the light and closed the door.  R.S. testified she allowed Appellant to remove her pants and then took off his own underwear and they had sex.

R.S. called Appellant several times on July 15, because she was upset and sad and just wanted to talk.  Appellant asked where her mother was and, upon learning that R.S.’s mother had gone to take her brother to work, he came to her apartment.  This time, R.S. let him into the apartment.  She just stood and hugged Appellant for a short time.  R.S. testified she just wanted to talk, but that he took her hand and led her to her bedroom where he laid her on her bed, removed her pants, and had sex with her a second time, which lasted about ten minutes, and then he got dressed and left.

By this time, R.S. said that her relationship with her mother was becoming strained.  She felt guilty about seeing someone “behind her [mother’s] back.”  She also wanted to be with Appellant because she thought he loved her.  R.S. testified this was her first experience with sexual intercourse.  Her mother testified that prior to this time, R.S. had not had any boyfriends or guy friends who would come over and spend time with her.  On August 31, R.S. called Appellant because she was thinking of running away for unrelated reasons, and he came and got her and took her to a park where they talked and “made out” for several hours.  At some point after that evening, R.S. told Appellant that she could not see him any more and when he asked why, she told him “straight out” that he was too old for her.

Appellant nevertheless continued to drive by the apartment and would park across the street or in a different driveway, where he could look in her windows.  Sometimes he would get out of his car and try to talk to her.  R.S. began to write down the dates and times he came by.  She related that he would tell her he loved her and would wait for her until she was eighteen.  On the night of August 31, he knocked on her window, told her he loved her, and wanted to know why she would not call him.  This “scared” her, and she closed her blinds.  She was “shaken up.”

When she thought he was gone, R.S. went across the street to the Texaco station to get a drink to settle her stomach.  R.S. testified, however, that Appellant was not gone.  He grabbed her wrist as she tried to enter the store, telling her that he loved her and wanted to be with her, and pulling her toward him and his car.  She twisted and tried to get away, telling him that she did not want to see him.  She broke away and entered the store where she waited until he was gone.

Because R.S. was scared, she said, she told her mother a few days later that Appellant was watching her and admitted that they had “kind of had a relationship.”  When her mother asked what kind, she admitted that it was sexual.  R.S.’s mother took her to the police and to the doctor that day.  In her testimony, R.S.’s mother confirmed her daughter’s description of the incident at the Texaco store and that he had been driving by the apartment.  She also testified that R.S. ultimately told her that she and Appellant had sex on two occasions.

Even after his arrest, Appellant continued to drive by R.S.’s apartment occasionally.  The jury found Appellant guilty of the second degree felony of sexual assault and assessed his sentence at three and one-half years’ confinement.

III.  DISCUSSION

Appellant complains that evidence of the occasion when he came into the apartment and had sex with R.S. the second time was evidence of an extraneous offense not charged by the State.  Accordingly, Appellant contends that the trial court erred in admitting the evidence over his rule 403 objection by failing to conduct the required balancing test under that rule to determine whether the danger of unfair prejudice outweighed any probative value.  
See
 
Tex. R. Evid
. 403.

Before eliciting the testimony regarding the second sexual  encounter, the prosecuting attorney approached the bench and announced his intent to prove up that event.  The following discussion then took place outside the presence of the jury:

THE COURT:  What’s your objection?

[DEFENSE COUNSEL]:  Your Honor, I would object that it’s irrelevant, and also it’s an attempt essentially to prejudice the jury.  I would argue that the State has offered sufficient evidence to make a case based on the offense alleged, which is sexual assault on the 3
rd
 of July, 2001.  We’ve now passed that alleged date, and anything offered at this point I would say is irrelevant to the question we’re here to try, which is whether or not a sexual assault occurred on July 3
rd
.

Further, I’d argue that whatever the complainant’s state of mind was after that date is, again, not relevant to what her state of mind was before and during the date of the offense.

Basically, my position would be that at this point the danger of an unfair prejudice certainly outweighs the probative value of this evidence, and it’s really sufficient -- more appropriate punishment evidence than guilt evidence at this point, your Honor.

[PROSECUTOR]:  May I respond?

THE COURT:  Yes, you may.

[PROSECUTOR]:  Thank you, your Honor.  With respect to this continuing relationship under Article 38.37, Section 2, it talks about evidence of other crimes, wrongs, or acts committed by a defendant against a child.  It specifically says the previous and subsequent relationship between the defendant and the child are relevant matters.  And we would also -- 

THE COURT:  Hang on a second.  Let me read that real quick.

[PROSECUTOR]:  Thank you, your Honor.

(Pause in the proceedings)

THE COURT:  Okay.  I’m going to overrule the objection. 

Appellant points out that his counsel made two objections, one as to relevance and the second that the danger of unfair prejudice outweighed the probative value under rule 403, but that the State responded only to the relevance objection before being cut off by the court so that it could review the cited provision of the code of criminal procedure controlling the relevance objection.  Appellant reasons that the court then made an “instant” ruling, showing that the court ruled only on the relevance objection and thus never performed the balancing test required under his rule 403 objection.  Appellant does not complain of the trial court’s ruling on the relevance objection, which was clearly proper under article 38.37 of the code of criminal procedure.
(footnote: 2)  

We review rule 403 rulings under an abuse of discretion standard.  
Montgomery v. State
, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh’g);
 Nolen v State
, 872 S.W.2d 807, 812 (Tex. App.—Fort Worth 1994, pet. ref’d).  Under rule 403, even though evidence is relevant, it may be excluded when its probative value is substantially outweighed by its unfair prejudicial effect.  
Tex. R. Evid.
 403; 
Montgomery
, 810 S.W.2d at 387.  When evidence of extraneous offenses or acts is relevant under article 38.37, the trial court is still required to conduct a balancing test if a proper objection is made based on rule 403.  
Rojas v. State
, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); 
Williams v. State
, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997) (holding trial court has no discretion as to whether to conduct balancing test under rule 403). 

The State argues, and we agree, that the trial court is presumed to have engaged in the required balancing test once a party objects on the ground of rule 403 and the trial court rules on the objection,
 unless the record indicates otherwise
.  
Tex. R. Evid
. 403;
 Rojas
, 986 S.W.2d at 250; 
Santellan v. State
, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997); 
see also Moyer v. State
, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref’d); 
Nolen
, 872 S.W.2d at 812.  Moreover, the trial court is not required to announce on the record that it has conducted and completed the balancing test in its own mind.  
Williams,
 958 S.W.2d at 195-96; 
Ford v. State
, 26 S.W.3d 669, 676 (Tex. App.—Corpus Christi 2000, no pet.); 
Nolen
, 872 S.W.2d at 812.     

The record, as quoted above, does not affirmatively indicate that the trial court failed to conduct the balancing test.  Contrary to Appellant’s argument, the record does not reflect that the trial court made an “instant” ruling after the relevancy discussion.  Instead, as the State points out, the record expressly reflects a “[p]ause in the proceedings” before the trial court’s ruling, during which time the court could have thoroughly scrutinized any prejudicial effect of the proffered evidence.  Silence of the record does not imply that the trial court did not conduct the required balancing test, and we must thus presume that it did.  
Williams
, 958 S.W.2d at 196; 
Santellan,
 939 S.W.2d at 173.  Based on the presumption that the trial court conducted the required balancing test, we hold that the trial court did not abuse its discretion in admitting the evidence over Appellant’s objection.  
See Santellan,
 939 S.W.2d at 173 (holding standard of review is abuse of discretion); 
Nolen
, 872 S.W.2d at 812 (relying on presumption that trial court conducted balancing test and overruling complaint on that basis without reaching harm analysis).

IV.  CONCLUSION

Accordingly, we overrule Appellant’s sole point and affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: June 26, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Article 38.37 of the code of criminal procedure provides in pertinent part as follows:

Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

the state of mind of the defendant and the child; and

the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann.
 art. 38.37, § 2 (Vernon Supp. 2003).