TOBAR V. STATE






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-455-CR
 
BALTAZAR TOBAR
                                                           APPELLANT
V.
THE STATE OF TEXAS
                                                           STATE
------------
FROM THE 362ND DISTRICT COURT OF DENTON COUNTY,
TEXAS
------------
MEMORANDUM OPINION(1)
------------
I. INTRODUCTION
A jury found Appellant, Baltazar Tobar, guilty of sexual assault of a child,
and assessed punishment at three and one-half years' confinement. In one point,
Appellant complains that the trial court erred when it admitted extraneous
offense evidence without first performing the balancing test required by rule
403 of the Texas Rules of Evidence to determine whether the evidence's probative
value was substantially outweighed by its unfairly prejudicial effect. See
Tex. R. Evid. 403. We affirm.
II. BACKGROUND FACTS
Appellant was charged with sexual assault of R.S., a child
younger than seventeen years of age, on or about July 3, 2001. At the time of
the offense, Appellant was thirty-nine years old and the complainant was fifteen
years old. At trial, the evidence consisted of the testimony of R.S., her
mother, and the investigating police officer. R.S. lived in an apartment complex
with her mother and brother. Appellant often visited a friend of his who lived
across the hallway. R.S. testified as to the events that unfolded in the spring
and summer of 2001.
While Appellant was working on his friend's car one day in May, he approached
R.S. while she was sitting on her back porch reading, and they began talking.
Appellant asked if he could call her. R.S. declined because she knew her mother
would not like it since he was "older." She testified she did not know
Appellant's age but believed he was twenty-six or twenty-seven years old.
Appellant gave her his home, work, and cell telephone numbers and told her to
call him. Thereafter, when he would visit his friend, Appellant and R.S. would
talk and "flirt" when her mother and brother were not around.
A few days later, while her mother was gone, R.S. called Appellant. In the
conversation, she told him she was only fifteen years old. Over the next couple
of weeks, she called him on several occasions and they would talk when her
mother was at work or when she was at a friend's or her grandmother's home. On
June 16, R.S. met Appellant at a mall, where they walked around for about two
hours. Appellant continued to talk to R.S. when she was outside her apartment,
and they continued their telephone conversations. Appellant would compliment her
and make her feel special, and eventually broached the subject of wanting sex
with her.
R.S. and Appellant decided that he would come over one night while her mother
was at work. On the evening of July 3, 2001, after her mother had left for her
night shift as a nurse, Appellant came over and parked his car outside the
apartment. R.S. slipped out the back door so her brother would not know and sat
on Appellant's car, and they talked and "made out" for a couple of
hours. He began to rub her back and legs and to kiss her neck, and he again
started talking about sex and wanting to make love to her. She felt
uncomfortable and, at first, told him "no." After about another hour,
he looked into the laundry room and suggested that they go inside it. They
walked in and he turned off the light and closed the door. R.S. testified she
allowed Appellant to remove her pants and then took off his own underwear and
they had sex.
R.S. called Appellant several times on July 15, because she was upset and sad
and just wanted to talk. Appellant asked where her mother was and, upon learning
that R.S.'s mother had gone to take her brother to work, he came to her
apartment. This time, R.S. let him into the apartment. She just stood and hugged
Appellant for a short time. R.S. testified she just wanted to talk, but that he
took her hand and led her to her bedroom where he laid her on her bed, removed
her pants, and had sex with her a second time, which lasted about ten minutes,
and then he got dressed and left.
By this time, R.S. said that her relationship with her mother was becoming
strained. She felt guilty about seeing someone "behind her [mother's]
back." She also wanted to be with Appellant because she thought he loved
her. R.S. testified this was her first experience with sexual intercourse. Her
mother testified that prior to this time, R.S. had not had any boyfriends or guy
friends who would come over and spend time with her. On August 31, R.S. called
Appellant because she was thinking of running away for unrelated reasons, and he
came and got her and took her to a park where they talked and "made
out" for several hours. At some point after that evening, R.S. told
Appellant that she could not see him any more and when he asked why, she told
him "straight out" that he was too old for her.
Appellant nevertheless continued to drive by the apartment and would park
across the street or in a different driveway, where he could look in her
windows. Sometimes he would get out of his car and try to talk to her. R.S.
began to write down the dates and times he came by. She related that he would
tell her he loved her and would wait for her until she was eighteen. On the
night of August 31, he knocked on her window, told her he loved her, and wanted
to know why she would not call him. This "scared" her, and she closed
her blinds. She was "shaken up."
When she thought he was gone, R.S. went across the street to the Texaco
station to get a drink to settle her stomach. R.S. testified, however, that
Appellant was not gone. He grabbed her wrist as she tried to enter the store,
telling her that he loved her and wanted to be with her, and pulling her toward
him and his car. She twisted and tried to get away, telling him that she did not
want to see him. She broke away and entered the store where she waited until he
was gone.
Because R.S. was scared, she said, she told her mother a few days later that
Appellant was watching her and admitted that they had "kind of had a
relationship." When her mother asked what kind, she admitted that it was
sexual. R.S.'s mother took her to the police and to the doctor that day. In her
testimony, R.S.'s mother confirmed her daughter's description of the incident at
the Texaco store and that he had been driving by the apartment. She also
testified that R.S. ultimately told her that she and Appellant had sex on two
occasions.
Even after his arrest, Appellant continued to drive by R.S.'s apartment
occasionally. The jury found Appellant guilty of the second degree felony of
sexual assault and assessed his sentence at three and one-half years'
confinement.
III. DISCUSSION
Appellant complains that evidence of the occasion when he came into the
apartment and had sex with R.S. the second time was evidence of an extraneous
offense not charged by the State. Accordingly, Appellant contends that the trial
court erred in admitting the evidence over his rule 403 objection by failing to
conduct the required balancing test under that rule to determine whether the
danger of unfair prejudice outweighed any probative value. See Tex. R.
Evid. 403.
Before eliciting the testimony regarding the second sexual encounter, the
prosecuting attorney approached the bench and announced his intent to prove up
that event. The following discussion then took place outside the presence of the
jury:

         THE COURT: What's your
 objection?


         [DEFENSE COUNSEL]: Your Honor, I
 would object that it's irrelevant, and also it's an attempt essentially to
 prejudice the jury. I would argue that the State has offered sufficient
 evidence to make a case based on the offense alleged, which is sexual assault
 on the 3rd of July, 2001. We've now passed that alleged date, and
 anything offered at this point I would say is irrelevant to the question we're
 here to try, which is whether or not a sexual assault occurred on July 3rd.
         Further, I'd argue that whatever
 the complainant's state of mind was after that date is, again, not relevant to
 what her state of mind was before and during the date of the offense.
         Basically, my position would be
 that at this point the danger of an unfair prejudice certainly outweighs the
 probative value of this evidence, and it's really sufficient -- more
 appropriate punishment evidence than guilt evidence at this point, your Honor.
         [PROSECUTOR]: May I respond?
         THE COURT: Yes, you may.
         [PROSECUTOR]: Thank you, your
 Honor. With respect to this continuing relationship under Article 38.37,
 Section 2, it talks about evidence of other crimes, wrongs, or acts committed
 by a defendant against a child. It specifically says the previous and
 subsequent relationship between the defendant and the child are relevant
 matters. And we would also --
         THE COURT: Hang on a second. Let
 me read that real quick.
         [PROSECUTOR]: Thank you, your
 Honor.
 (Pause in the proceedings)
         THE COURT: Okay. I'm going to
 overrule the objection.

Appellant points out that his counsel made two objections, one as to
relevance and the second that the danger of unfair prejudice outweighed the
probative value under rule 403, but that the State responded only to the
relevance objection before being cut off by the court so that it could review
the cited provision of the code of criminal procedure controlling the relevance
objection. Appellant reasons that the court then made an "instant"
ruling, showing that the court ruled only on the relevance objection and thus
never performed the balancing test required under his rule 403 objection.
Appellant does not complain of the trial court's ruling on the relevance
objection, which was clearly proper under article 38.37 of the code of criminal
procedure.(2)
We review rule 403 rulings under an abuse of discretion standard. Montgomery
v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g);
Nolen v State, 872 S.W.2d 807, 812 (Tex. App.--Fort Worth 1994, pet. ref'd).
Under rule 403, even though evidence is relevant, it may be excluded when its
probative value is substantially outweighed by its unfair prejudicial effect.
Tex. R. Evid. 403; Montgomery, 810 S.W.2d at 387. When evidence of
extraneous offenses or acts is relevant under article 38.37, the trial court is
still required to conduct a balancing test if a proper objection is made based
on rule 403. Rojas v. State, 986 S.W.2d 241, 250 (Tex. Crim. App.
1998); Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997)
(holding trial court has no discretion as to whether to conduct balancing test
under rule 403).
The State argues, and we agree, that the trial court is presumed to have
engaged in the required balancing test once a party objects on the ground of
rule 403 and the trial court rules on the objection, unless the record
indicates otherwise. Tex. R. Evid. 403; Rojas, 986 S.W.2d at 250; Santellan
v. State, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997); see also Moyer v.
State, 948 S.W.2d 525, 531 (Tex. App.--Fort Worth 1997, pet. ref'd); Nolen,
872 S.W.2d at 812. Moreover, the trial court is not required to announce on the
record that it has conducted and completed the balancing test in its own mind. Williams,
958 S.W.2d at 195-96; Ford v. State, 26 S.W.3d 669, 676 (Tex.
App.--Corpus Christi 2000, no pet.); Nolen, 872 S.W.2d at 812.
The record, as quoted above, does not affirmatively indicate that the trial
court failed to conduct the balancing test. Contrary to Appellant's argument,
the record does not reflect that the trial court made an "instant"
ruling after the relevancy discussion. Instead, as the State points out, the
record expressly reflects a "[p]ause in the proceedings" before the
trial court's ruling, during which time the court could have thoroughly
scrutinized any prejudicial effect of the proffered evidence. Silence of the
record does not imply that the trial court did not conduct the required
balancing test, and we must thus presume that it did. Williams, 958
S.W.2d at 196; Santellan, 939 S.W.2d at 173. Based on the presumption
that the trial court conducted the required balancing test, we hold that the
trial court did not abuse its discretion in admitting the evidence over
Appellant's objection. See Santellan, 939 S.W.2d at 173 (holding
standard of review is abuse of discretion); Nolen, 872 S.W.2d at 812
(relying on presumption that trial court conducted balancing test and overruling
complaint on that basis without reaching harm analysis).
IV. CONCLUSION
Accordingly, we overrule Appellant's sole point and affirm the trial court's
judgment.
 
                                                           ANNE
GARDNER
                                                           JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: June 26, 2003

1. See Tex. R. App. P. 47.4.
2. Article 38.37 of the code of criminal procedure
provides in pertinent part as follows:

         Notwithstanding Rules 404 and
 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or
 acts committed by the defendant against the child who is the victim of the
 alleged offense shall be admitted for its bearing on relevant matters,
 including:
 
 (1)    the state of mind of the defendant and the child; and
 (2)    the previous and subsequent relationship between
 the defendant and the child.
 

Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2003).