

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00435-CR

CHANG HYEONG LEE                                                         APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In seven points, Appellant Chang Hyeong Lee appeals his conviction for sexual assault of a child. We affirm.

### II. Factual and Procedural Background

A grand jury indicted Lee for sexually assaulting then fourteen-year-old Jane Branch.[2] The jury convicted Lee of sexual assault of a child under

---

[1]*See* Tex. R. App. P. 47.4.

seventeen years of age and sentenced him to ninety months' incarceration.[3] This appeal followed.

### III. Sufficiency

In his first and second points, Lee challenges the legal and factual sufficiency of the evidence to support his conviction. But after Lee filed his brief, the court of criminal appeals held that there is no meaningful distinction between the legal-sufficiency standard and the factual-sufficiency standard. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* We overrule Lee's second point.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*,

---

[2]We use a pseudonym to protect the complainant's identity.

[3]Because Lee challenges the trial court's denial of his motion to suppress, the sufficiency of the evidence to support his conviction, and the trial court's ruling on several of his evidentiary objections, we will address the evidence and proceedings in greater detail below.

443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

**B. Evidence**

On January 3, 2008, the Fort Worth police were conducting surveillance of Lee's store, the Glen Garden Mini Mart in Fort Worth, based on information that the store would be the site of a gang-related human trafficking violation. Fort Worth Gang Unit Officer Travis Eddleman testified that he saw a young Hispanic male and Jane Branch enter Lee's store. After a short time, the Hispanic male exited alone, and the store's lights went out as if the business had closed.

Officer Eddleman knocked on the store's locked front door, and Lee eventually let him into the store. Officer Eddleman found Branch hiding in the store's back room, which contained a bed, a dinette table, a refrigerator, and a heater. In the same room, the police found a condom wrapper and an "unrolled and wet" condom. After talking with Branch, the police arrested Lee for sexual assault of a child.

Branch testified that she had sex with Lee on January 3, 2008; that, at the time, she was fourteen years old and was not Lee's spouse; and that after taking her to the store's back room, Lee had removed her pants and underwear, laid her on the bed, penetrated her sexual organ with his tongue and his finger, and, after putting on a condom, penetrated her sexual organ with his penis. She also stated that she saw him remove the condom, but she did not see him throw it away, and that after talking with the police, they took her to a hospital, where she underwent a sexual assault examination.

4

Branch also testified that on three prior occasions, Lee had paid Vario Centro (VC) gang members in order for Lee to have similar sexual contact with her. On cross-examination, Branch stated that at the time of Lee's arrest, she had run away from home and was staying with VC gang members; that she had been taking drugs, including cocaine; and that her boyfriend at the time, one of the gang members, was her pimp and that he paid her with cocaine.

Fort Worth Police Officer J.J. Jeanes testified that he photographed Lee's store on the night of Lee's arrest and that he observed both an "open condom wrapper" and an "unrolled and wet" condom under a paper towel in a cardboard box in the store's back room. Officer Jeanes collected the condom and wrapper, the top of the bed's mattress, a pillow case, a comforter, and a fitted sheet.

Fort Worth Police Detective H.D. Murtaugh testified that she was at the mini-mart on the night of Lee's arrest, that she spoke with Branch at the scene, that she advised Lee of his rights several hours after Lee's arrest, and that after Lee waived his rights, she interviewed him. Detective Murtaugh stated that despite an initial denial, Lee admitted to having sex with Branch and admitted that he knew it was illegal to have sex with an underage girl. On cross-examination, Detective Murtaugh testified that she did not witness anyone taking Lee's DNA sample and that she did not believe that the police had collected Lee's DNA. Lee then entered a completed buccal swab consent form into evidence. Lee's only witness, Christina Capt, a forensic analyst and technical leader at the University of North Texas Center for Human Identification, testified

5

that she had received DNA evidence from Branch's sexual assault examination but had not received a buccal swab from any known suspect.

## C. Sexual Assault of a Child

A person commits sexual assault of a child under seventeen years of age when that person intentionally or knowingly causes the penetration of the child's sexual organ or causes the child's sexual organ to contact the mouth, anus, or sexual organ of another person, and the child is not the person's spouse. *See* Tex. Penal Code § 22.011(a)(2), (c)(1) (Vernon Supp. 2010). The indictment alleged that on or about January 3, 2008, Branch was under seventeen years old, that she was not Lee's spouse, and that Lee committed the offense of sexual assault of a child by intentionally or knowingly (1) inserting his penis in Branch's sexual organ, (2) causing Branch's sexual organ to come into contact with his mouth, and (3) inserting his finger into Branch's sexual organ.

## D. Analysis

The record reflects that on January 3, 2008, Branch was fourteen years old; that she was not Lee's spouse; that Lee admitted that he paid to have sex with Branch and that he had sex with her; that Branch testified in detail about how Lee penetrated her sexual organ with his mouth, finger, and penis; that Officer Jeanes collected a recently used condom from a box in the store's back room; that Lee's store was under police surveillance; and that Officer Eddleman observed Branch entering, but not exiting, Lee's store and found Branch hiding in a back room that contained a bed. Viewing the evidence in the light most

6

favorable to the prosecution, we conclude that the jury could have found beyond a reasonable doubt that Lee sexually assaulted fourteen-year-old Branch. *See* Tex. Code. Crim. Proc. art. 38.04; *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet ref'd) (holding child-victim's testimony detailing an assault legally sufficient to support conviction for sexual assault). We overrule Lee's first point.

## IV. Suppression

In his third point, Lee, who is of Korean descent, argues that his statement to the police should have been suppressed because he did not understand English well enough to knowingly and intelligently waive his rights; thus, the statement was not voluntary, and its admission violated the Fifth and Fourteenth Amendments to the United States Constitution and article 38.22 of the code of criminal procedure.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.

7

Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

8

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. Suppression Hearing

The trial court carried Lee's motion to suppress his oral statement until trial and held a suppression hearing prior to Detective Murtaugh's testimony. *See Jackson v. Denno*, 378 U.S. 368, 394, 84 S. Ct. 1774, 1790 (1964). During the hearing, Detective Murtaugh testified that after Lee's arrest she read each of his rights to him; that she showed Lee the *Miranda* form as she read his rights to him; that Lee acknowledged that he understood each right; that after she read each right to him, Lee initialed the *Miranda* form; and that Lee waived his rights and agreed to talk with her. Detective Murtaugh responded affirmatively when asked by the State if, based on her twenty-four years' experience, she was confident that Lee understood the *Miranda* warning.

During Detective Murtaugh's testimony, the State proffered, for purposes of the suppression hearing only, a recorded copy and a transcript of Lee's interview. The recording confirmed that Detective Murtaugh read Lee his rights and that Lee could follow along on the *Miranda* form as his rights were read to him; that Detective Murtaugh advised Lee that he could remain silent and that any statement could be used against him at trial; and that after Lee responded

that he "little bit understood" these rights, Detective Murtaugh repeated that any statement could be used against Lee in court. After she advised Lee of his remaining rights, Detective Murtaugh asked him if he understood "all that" and if he wanted her to repeat anything. Lee then confirmed in English that he understood his rights. Detective Murtaugh asked Lee to sign and date the *Miranda* form, and Lee signed the form in English. During this exchange, Lee corrected Detective Murtaugh's recitation of the time, telling her that it should be 12:47 a.m. and not p.m. as she had erroneously stated. The recording revealed that contrary to Detective Murtaugh's testimony, she asked Lee to write his initials beside each right after both she and Lee had signed the form and not as she read each right to him. The recording also revealed that Lee had sufficient command of the English language to carry on an hour-long conversation about the events leading up to his arrest.

Lee, who testified at the suppression hearing through an interpreter, stated that he had resided in the United States for twenty years and that during the four years prior to his arrest, he had communicated with his mini-mart customers in English. Lee stated that he did not understand his rights or the *Miranda* process and that he initialed and signed the *Miranda* form because Detective Murtaugh told him to do so. Lee also testified that he quickly agreed that he understood because he needed to use the restroom and Detective Murtaugh would "not even allow me to go to the bathroom, and it was a torture." Although Lee testified that

10

he asked Detective Murtaugh for an interpreter and to go to the restroom, neither the recording nor the transcript contain these requests.

After listening to the first part of the audio recording and reading the transcript of Lee's entire interview,[4] the trial court denied Lee's motion and noted that it was

> satisfied that [Lee] had sufficient command of the language to understand everything that [the] [d]etective . . . had been asking him, including but not limited to the [required Miranda] warnings . . . . [] and there is nothing in [the transcript] that indicates that the Defendant ever invoked his rights to terminate the interview or to request counsel and did nothing but to freely and voluntarily answer questions . . . .

The trial court's written findings and conclusions stated:

Findings of Fact:

> . . . .
>
> 4. Prior to asking any questions regarding the offense, Detective Murtaugh advised the defendant of his *Miranda* warnings.
>
> 5. Detective Murtaugh, after each warning was read to him, would ask the defendant, in English, if he understood each respective warning. The defendant advised Detective Murtaugh, each time, that he understood the warnings. The defendant placed his initials beside each warning.
>
> 6. At the conclusion of the warnings being given, the defendant signed his name, in English, on the warning sheet indicating that he understood his rights.

---

[4]Neither the audio recording nor the transcript were presented to the jury, and the jury's only exposure to Lee's statement and admission that he had sex with Branch was through Detective Murtaugh's testimony.

7.    After the defendant signed the warning sheet, Detective Murtaugh conducted an oral interview with the defendant in English.  The oral interview was reviewed both in court and *in camera* by the Court.

8.   There was no interpreter present during any of the interview between the defendant and Detective Murtaugh.

9.   The interview between the defendant and Detective Murtaugh lasted just under one hour in length.

10.  The defendant testified at the hearing on the motion to suppress that he spoke only a limited amount of English.

Conclusions of Law:

1.    Based upon the contents of the recording of the interview and the testimony of Detective Murtaugh, the court concludes that the defendant understood his rights as explained to him in English.

2.   The defendant clearly answered the questions asked of him by Detective Murtaugh, both at the scene of his arrest and at the Fort Worth Police Department.

3.   The defendant was able to understand his rights and engage in a conversation with Detective Murtaugh using the English language.

4.   The constitutional mandates of Article 38.23 of the Code of Criminal Procedure were followed in this case.

5. The electronic recording between the defendant and Detective Murtaugh is admissible at trial.

6.  The court denies the defendant's motion to suppress his oral statement.

## C.  Analysis

Lee's ability to understand English was a determination for the trial court to make based on its evaluation of the credibility and demeanor of the witnesses.

*See Weide*, 214 S.W.3d at 24–25. The trial court read the entire interview transcript and listened to the first one-third of the audio recording of Lee's interview. The trial court also heard testimony from both Detective Murtaugh and Lee regarding Lee's understanding and voluntary waiver of his rights. Other than Lee's testimony, the record does not reflect that Lee requested a translator or otherwise indicated that he did not understand his rights as read to him by Detective Murtaugh. And, although the audio recording does not support trial court finding of fact number five in its entirety[5] the recording supports the remaining findings and reflects that Detective Murtaugh read Lee all of his rights, that Lee verbally acknowledged in English that he understood his rights, that he willingly initialed and signed the *Miranda* form in English, and that he held a lengthy conversation in English with Detective Murtaugh. The record supports the trial court's determination that Lee understood his rights and knowingly and voluntarily gave his statement to Detective Murtaugh. *See Stevens*, 235 S.W.3d at 740 (noting an appellate court must uphold the trial court's ruling if it is supported by the record and correct under any applicable theory of law). Because the trial court could have found that Lee had sufficient command of the English language to understand his rights as they were explained to him, it did not err by denying Lee's motion to suppress. We overrule Lee's third point.

---

[5]That Lee initialed each right after it was read to him individually.

## V. Rule 403 Objections

In his fourth through seventh points, Lee argues that the trial court abused its discretion by overruling his rule 403 objections. Specifically, Lee argues that the admitted evidence was substantially more prejudicial than probative and thus inadmissible under rule 403.[6]

## A. Standard of Review

We review a trial court's determination under rule 403 for an abuse of discretion, recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Jones v. State*, 119 S.W.3d 412, 421–22 (Tex. App.—Fort Worth 2003, no pet.). In balancing the probative value and unfair prejudice under rule 403, we presume that the probative value will outweigh any prejudicial effect. *Montgomery*, 810 S.W.2d at 389. It is therefore the objecting party's burden to

---

[6]As part of his fourth through sixth points, Lee generally argues that the trial court abused its discretion by failing to conduct a balancing test after his timely rule 403 objections. The trial court is not required to hold a hearing or announce for the record that it has conducted and completed the balancing test in its own mind. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd). The fact that a trial judge made a proper balancing test can be implied from the record. *Montgomery v. State*, 810 S.W.2d 372, 393 n.4 (Tex. Crim. App. 1991) (op on reh'g); *Moyer v. State*, 948 S.W.2d 525, 531 (Tex. App.—Fort Worth 1997, pet. ref'd). And, because the record does not indicate the trial court refused to consider the objection or conduct the requisite balancing test—it simply overruled Lee's objection—we cannot conclude that the trial court abused its discretion by failing to balance the evidence's probative value against its unfairly prejudicial effect. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *Menchaca v. State*, 901 S.W.2d 640, 649 (Tex. App.—El Paso 1995, pet. ref'd).

14

demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice. *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Poole v. State*, 974 S.W.2d 893, 897 (Tex. App.— Austin 1998, pet. ref'd).

## B. Prior Sexual Relationship

In his fourth point, Lee complains that the trial court erred by denying his rule 403 objection to the State's plan to refer to his sexual history with Branch in its opening statement. However, even though the trial court overruled Lee's objection, the record reflects that the State did not refer to the parties' sexual history in its opening statement. Therefore, we cannot say that the trial court abused its discretion by overruling Lee's objection. *Cf. Peterson v. State*, No. 14-05-00874-CR, 2006 WL 3511784, at *2 (Tex. App.—Houston [14th Dist.] Dec. 7, 2006, no pet.) ("The trial court did not err in overruling an objection to the admission of documents that were never introduced into evidence."). We overrule Lee's fourth point.

In his fifth point, Lee complains that the trial court erred by denying his rule 403 objection to Branch's testimony about her and Lee's prior sexual encounters.[7]

---

[7]Lee does not challenge the relevance of this evidence, and we note that if it does not violate rule 403, it is otherwise admissible. *See* Tex. Code Crim. Proc. Ann. art. 38.37 § 2 (Vernon Supp. 2010); *Jones*, 119 S.W.3d at 421.

15

### 1. Extraneous Offense Evidence

After the trial court overruled Lee's objection to the State's opening statement, the trial court granted Lee a running objection and agreed to give the jury a limiting instruction on evidence pertaining to Lee and Branch's prior sexual encounters.

During Branch's testimony, before to discussing the prior sexual encounters, the State requested that the parties approach the bench "[j]ust to be safe . . . regarding the other sexual activities." At that time, Lee renewed his objection and his request for a jury instruction on the issue. The trial court again overruled Lee's objection. After Branch testified that she met Lee in December 2007, the trial court instructed the jury that

> we may be getting into some testimony here that is different than the date that is set out in the indictment. . . . You're instructed that if there is testimony before you that constitutes other bad acts or crimes committed allegedly by this defendant, you cannot consider them for any purpose unless you first believe that they are proved beyond a reasonable doubt.
>
> And after that, you may -- you may take them into consideration for assessing the intent or the state of mind of the Defendant at the time of the commission of the offense alleged in the indictment and for no other purpose.

After this instruction, Branch testified that VC gang members had arranged for her to have sex with Lee on three occasions prior to January 3, 2008.[8]

---

[8]In his opening statement, Lee stated that "almost on a daily basis" VC gang members came to his store to intimidate, coerce, and threaten him. He claimed that the gang members would take his property, that they would "intimidate him and do other things that were highly illegal and inappropriate,"

16

Branch stated that VC gang members first took her to meet Lee at his store in December 2007, that she went with Lee to a nearby hotel, and that once inside a hotel room, Lee placed her on the bed, removed her pants, and after putting his tongue on her sexual organ, Lee put on a condom and penetrated her sexual organ with his penis. Branch also testified that VC gang members took her to Lee's store on two other occasions and that on both occasions Lee, in the back room of his store, performed the same sexual acts with her as he had in the hotel room.

Branch stated that on the night of Lee's arrest, she did not tell the officers about the prior incidents because she had been afraid that she would be arrested for prostitution, and that although several months prior to trial she told the prosecutor about one of her prior encounters with Lee, she did not tell him about the other two incidents until a day before the trial because she was embarrassed, "had guilt," and was afraid that she would get in trouble.

In its charge to the jury, the trial court instructed the jury that

> if there is any testimony before you in this case regarding the Defendant's having committed offenses, wrongs, or acts other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such offenses, wrongs, or acts, if any were committed, and even then you may only consider the same in determining: (1) the motive, opportunity, intent, knowledge, or identity for this defendant now on

---

and that gang members would bring girls by to sell them to him as prostitutes but that Lee "would not participate in this type of activity. He chose not to participate in this type of activity."

17

trial before you, or (2) to consider the state of mind of the defendant and the child as well as the previous and subsequent relationship between the defendant and the child, if any; and for no other purpose.

### 2. Applicable Law

To determine whether the prejudice of evidence such as an extraneous offense substantially outweighs its probative value we consider (1) how compellingly the evidence serves to make a fact of consequence more or less probable, which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other extraneous offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicated offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence. *Mozon*, 991 S.W.2d at 847 (citing *Montgomery*, 810 S.W.2d at 389–90).

When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred by failing to exclude it. *Curtis v. State*, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 392).

18

### 3. Analysis

Applying the rule 403 balancing factors, we note that evidence of Lee and Branch's prior recent sexual encounters is highly probative to show Lee's state of mind and the nature of his relationship with Branch and made it compellingly likely—because he had the necessary intent and ability—that he performed sexual acts with Branch on January 3, 2008. *See Mozon*, 991 S.W.2d at 846; *Ernst v. State*, 971 S.W.2d 698, 701 (Tex. App.—Austin 1998, no pet.).

Further, although Branch's testimony about her prior sexual encounters with Lee encompassed about one-half of the State's direct examination[9]—which included her explanation about why she had delayed in telling the State about the prior incidents—the portions of her testimony detailing her and Lee's prior sexual activities are relatively short. Additionally, prior to Branch's testimony and in the jury charge, the trial court specifically instructed the jury about how to consider evidence concerning the prior sexual encounters. Consequently, Branch's testimony about her extraneous sexual encounters with Lee was not likely to create such prejudice in the juror's minds that they would be unable to consider the evidence for its proper purpose. *See Poole*, 974 S.W.2d at 898 (noting that evidence of extraneous sexual contact explains an unnatural relationship that would otherwise seem wholly illogical and implausible to the average juror).

---

[9]Sixteen out of thirty-eight total pages of direct testimony.

19

Likewise, Lee attacked Branch's credibility in his opening statement when he denied his involvement in prostitution activities, which increased the State's need for Branch's testimony about their prior sexual contact. And, beginning with the presumption that Branch's testimony about her prior sexual encounters with Lee was more probative than prejudicial and evaluating it under the rule 403 factors, we cannot say that Lee was unfairly prejudiced by Branch's testimony. *See Mozon*, 991 S.W.2d at 847; *Montgomery*, 810 S.W.2d at 389; *see also Boutwell v. State*, 719 S.W.2d 164, 178 (Tex. Crim. App. 1985) (noting that in prosecutions for sex offenses against children, "extraneous acts between the complainant and the defendant are usually more probative than prejudicial"). We overrule Lee's fifth point.

## C. Condom Photographs

In his sixth issue, Lee argues that admitting two photographs of a box containing a used condom and condom wrapper "did no more than to inflame the jury in sympathy for the State."

### 1. Photographic Evidence Under Rule 403

A court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including (1) the number of exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are in color or in black and white, (6) whether they are close up, (7) the availability of other means of proof, and (8) other circumstances to the individual case. *Alami v. State*, 333 S.W.3d 881, 889

(Tex. App.—Fort Worth 2011, no pet. h.)  Photographs are neither cumulative not lacking in significant probative value simply because they merely corroborate other kinds of evidence.  *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999), *cert denied*, 528 U.S. 1082 (2000).

### 2.  Analysis

The two photographs are black and white medium and close-up distance depictions of the interior of a cardboard box that contained a used condom. Officer Jeanes had previously testified about the items, and Branch would later testify that Lee had used a condom when having sex with her.  *See Ramirez v. State*, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991) (noting that when verbal testimony describing a scene is admissible, then a photograph of that scene is also generally admissible).  Because Lee stated that he did not accept prostitutes offered by the gang or participate in prostitution-related activities, the State needed the photographs to corroborate both Branch's and Officer Jeanes's testimony.   Because the photographs corroborated Branch's and Officer Jeanes's testimony, there were only two black and white photographs offered, and those photographs were not gruesome, the trial court could have reasonably concluded that the probative value of the photographs was not substantially outweighed by their inflammatory nature.  *See Sarabia v. State*, 227 S.W.3d 320, 324 (Tex. App.—Fort Worth 2007, pet. ref'd) (noting that the State's need for photographs was increased when complainant's testimony was not supported by DNA or other physical evidence of sexual assault).  Accordingly, we hold that the

21

trial court did not abuse its discretion by overruling Lee's rule 403 objections and by admitting the photographs. We overrule Lee's sixth point.

## D. Lee's Statement

In his seventh point, Lee generally complains that because he did not speak fluent English, the trial court violated rule 403 by allowing his statement into evidence. In his brief, Lee provides three short statements in support of his argument: (1) "The Appellant did not speak fluent English"; (2) "The Trial Court abused its discretion by allowing Appellant's statement into evidence"; and (3) "Appellant received a ninety month sentence."

The record reflects that during voir dire of Detective Murtaugh in the suppression hearing, Lee made a rule 403 objection in conjunction with his motion to suppress and argued,

> I would suggest to the Court that because [Lee] doesn't speak English, he's of Korean descent, *the statement is not voluntary*.
>
> Therefore, I would suggest to the Court that the probative value would be outweighed by the highly prejudicial effect of letting the police officer testify to an interview of [Lee]. . . . [Emphasis added.]

Because we have already concluded that Lee's statement was voluntary, we overrule Lee's seventh point.

## VI.  Conclusion

Having overruled all of Lee's points, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2011