Case # 05-13-01411-CR

NO. 1044-15

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

RECEIVED IN
COURT OF APPEALS, 5th DIST.

OCT 14 2015

LISA MATZ
CLERK, 5th DISTRICT

TRACY SWIMS JR.
APPELLANT

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 19 2015

Abel Acosta, Clerk

VS.

STATE OF TEXAS
APPELLEE

FILED IN
COURT OF CRIMINAL APPEALS

OCT 20 2015

Abel Acosta, Clerk

FROM APPEAL NO. _____

TRIAL CAUSE NO. _____

DALLAS COUNTY

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:
COMES NOW PETITIONER AND FILES HIS PDR AND WILL SHOW
THIS HONORABLE COURT THE FOLLOWING:

I.

THE PETITIONER WAS CONVICTED IN THE ____ DISTRICT COURT OF
DALLAS COUNTY, TEXAS OF THE OFFENSE OF POSSESSION OF FIVE
POUNDS OR MORE BUT LESS THAN FIFTY POUNDS, IN CAUSE NO. _____
STYLED SWIMS JR. V. STATE OF TEXAS.
APPELLANT CONTENDS THAT HE WAS WRONGLY CONVICTED AND THE
EVIDENCE WAS INSUFFICIENT TO CONVICT HIM, AND WILL SHOW
THE FOLLOWING:

# II.

A TRIAL COURT'S RULING ON QUESTIONS OF LAW ARE REVIEWED BY THIS COURT OF CRIMINAL APPEALS DE NOVO. THAT REQUIRING THIS HONORABLE COURT OF CRIMINAL APPEALS TO EXERCISE ITS OWN JUDGEMENT AND determine EACH ISSUE.

## INSUFFICIENT EVIDENCE

THERE WAS NO EVIDENCE TO SUPPORT A GUILTY VERDICT. THERE WAS A BUS EMPLOYEE WHO TESTIFIED THAT THE ITEMS FOUND IN A BAG SMELLED LIKE MARIJUANA BUT THERE WAS NO EXPERT WITNESS OR ANALYST WHO TESTIFIED THAT THE ITEMS FOUND WAS MARIJUNA. THE EVIDENCE WAS INSUFFICIENT TO CONVICT APPELLANT FOR POSSESSION OF MARIJUANA. NOBODY PROVED THAT ANY OF THE BAGS BELONGED TO APPELLANT.

## Law of Parties

THE JURY CHARGE "LAW OF PARTIES" WAS ERRONEOUS BECAUSE THERE WERE NO PARTIES. APPELLANT WAS THE ONLY ONE THAT WAS CHARGED WITH ANY CRIME OR ARRESTED. SO THE LAW OF PARTIES JURY CHARGE WAS ERRONEOUSLY AND SUBJECTED ME TO EGREGIOUS HARM. WITHOUT THE LAW OF PARTIES CHARGE, I WOULD HAVE BEEN FOUND NOT GUILTY BECAUSE THE STATE FAIL TO PROVE THAT I POSSESSED THE REQUIRED MINIMUM AMOUNT TO CHARGE OR CONVICT ME. THE STATE FAIL TO PROVE BEYOND A DOUBT THAT I OWNED OR POSSESSED EITHER BAG THAT SUPPOSEDLY HAD MARIJUANA IN THEM. THE ONE THAT THE STATE ATTEMPTED TO PROVE THAT BELONG TO ME ONLY HAD 5-7LBS IN IT, WHICH WAS BELOW THE MINIMUM REQUIRED TO CHARGE ME.

When evidence at trial raises the evidence that their was no one else charged but appellant. The trial court should have charged the jury that a reasonable doubt on the issue requires that the defendant be acquitted. See Texas Penal Code Ann 2.03(d). Because the trial court fail to do that, then my probative value against unfair prejudice were violated. See Tex. Rule Evidence 403. Such violation was egregious harm and denied me a fair trial. See also Dickey v. State 22 SW. 3d @492. The appellate court must reverse upon a showing of some harm. Arline v. State says that the presence of any harm a reversal shall be. Also see Tex. Code Crim. Proc. Ann. Art. 3619.

Many cases has come before this court as this one and all has been reversed. See Jackson v. State 578 SW. 2d 748. The erroneous jury charge in this case at bar allowed the jury to convict appellant for an offense not alleged in the indictment. Law of parties.

## ILLEGAL EVIDENCE

The conviction used as evidence against appellant was over ten years old which violated Rule 609(B). And Art. 1.10 of Texas Constitution. There was no evidence that says that appellant had connection to any bag much less that appellant exercise care, custody, control, or management over any bag. Only bag (5) was tested according to testimony. So who had the other bags? Appellant was the only person arrested and charged with possession of marijuana between 5-7 lbs. Not 20 lbs or 26 lbs.

## RELIEF REQUESTED

BASED ON THE ABOVE FACTS. APPELLANT REQUEST THAT THIS HONORABLE COURT OF CRIMINAL APPEALS REVERSE THIS CASE AND ORDER A NEW TRIAL OR IN THE ALTERNATIVE ORDER A DISMISSAL AND ACQUITTAL. IT WOULD BE A GROSS FUNDAMENTAL MISCARRIAGE OF JUSTICE FOR THIS COURT TO ALLOW THIS CONVICTION TO STAND. NO REASONAL JURY WOULD HAVE FOUND APPELLANT GUILTY IF THE JURY CHARE OF LAW OF PARTIES WERE NOT GIVEN. AND BECAUSE OF THE ABOVE FACTS. APPELLANT REQUEST THIS COURT TO REVERSE THIS CONVICTION AND GRANT HIM THIS PDR AND ALL RELIEF SOUGHT HEREIN AND ANY OTHER RELIEF THIS COURT DEEMS JUST AND FAIR.

DONE ON THE 5th DAY OF OCTOBER 2015.

RESPECTFULLY SUBMITTED.

_____
APPELLANT PRO SE

## CERTIFICATE OF SERVICE

I declare under the penalty of perjury that a true and correct copy of this PDR was served on APPELLEE by placing same in prison mailbox on October 5. 2015 Addressed To: SUSAN HAWK
DISTRICT ATTORNEY
133 N. RIVERFRONT BLVD.
DALLAS, TEXAS 75207

Affirmed and Opinion Filed July 13, 2015



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-13-01411-CR
_____

### TRACY SWIMS, JR, Appellant
### V.
### THE STATE OF TEXAS, Appellee

_____

### On Appeal from the 195th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1330583-N

_____

# MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Bridges

A jury convicted appellant Tracy Swims, Jr. of possession of a useable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. The trial court, after finding two enhancement paragraphs true, sentenced Swims to thirty years' imprisonment.

On appeal, Swims argues the evidence is legally insufficient to support his conviction for possession of marijuana, and the trial court erroneously instructed the jury on law of parties. In his remaining issues, he argues the trial court abused its discretion by admitting (1) suspected marijuana, without proving it was marijuana, (2) cell phone photographs, (3) an email, and (4) testimony from a Mega Bus employee about drug trafficking. We affirm the trial court's judgment.

## Background

On March 5, 2013, around 11 p.m., Jerome Robinson was working as an assistant supervisor for Mega Bus in Grand Prairie, Texas. His duties included checking reservations and making sure passengers boarded the bus safely and the luggage was loaded correctly. He also identified any suspicious luggage.

During the process of loading luggage, one passenger, later identified as Swims, handed Robinson a bag that felt "unusual . . . It felt like something hard, something compressed." It was heavy and had a "real loud odor to it." Robinson said someone familiar with the smell of marijuana would know the bag contained narcotics because the odor was "real strong." Robinson took the black duffel bag from the passenger, who he described as a tall male wearing a white-striped shirt, black hat, and black shoes.

Robinson handed the bag to his co-worker, Joshua Simpson, who agreed the black duffel bag felt funny. Simpson also noticed the weight of the bag and its texture because it was lumpy, which was "very suspicious." He explained that for the size of the bag, it was heavy. When Simpson opened the bag they saw hard bricks wrapped in newspaper, and they knew it was marijuana. Simpson caught a glimpse of the person who handed the bag to Robinson, and Simpson described the man as a tall, black male, wearing a black baseball cap.

A supervisor shut down the bus and called police. All the passengers stayed on the bus and the luggage bin remained open until officers arrived. Robinson and Simpson noticed some passengers moving back and forth between the bathroom and acting suspiciously by "moving around too much." Simpson described it as, "Just out of the ordinary." Swims was one of the passengers moving around, going to the bathroom, and making head gestures.

Officer Brian Heymes was the first officer to arrive at the bus station. Robinson told him the bus was on lock down because of suspected narcotics. Robinson explained he received a black duffel bag from a black male wearing a white-striped shirt, a baseball cap, and black jacket. Robinson identified the bag for Officer Heymes.

Officer Heymes also observed a group of three or four individuals huddled together, who then separated and went to different areas, including the bathroom. He said they would reconvene and then separate again. At some point, he said they stayed in separate areas of the bus. Officer Heymes identified Swims as one of the individuals in the group.

Officer Derrick Castleberry watched Swims inside the bus after it was on lock down. Swims moved from the upper deck to the lower deck of the bus and talked with a female. He then went back to the upper deck, talked with a man subsequently identified as Swims's cousin, and later entered the bathroom on the lower deck. Officers later found marijuana in the bathroom. Officer Castleberry said Swims was watching out the window the whole time. Officer Castleberry thought Swims's movements were suspicious because he was the only one moving back and forth and up and down on the bus. Officer Castleberry did not notice anyone else acting suspiciously.

Officer Heymes called the K-9 unit. Officer Albert Martinez and his K-9 partner, Rocco, arrived shortly thereafter. When the K-9 unit arrived, Swims was talking loudly, cussing, and wanting to know when the bus was leaving.

Officer Heymes apprised Officer Martinez of the situation, but Officer Martinez did not want to know which bag contained the possible marijuana because he wanted to see if Rocco alerted on it. Officer Martinez gave Rocco the command to search and Rocco initially alerted on a blue bag and a black bag, but Officer Heymes said those were not the suspected bag. Rocco continued to search. Rocco then alerted on the black duffel bag. After Rocco alerted on the

black duffel bag, they opened it and Officer Heymes immediately recognized the vacuum-sealed package as marijuana. The black duffel bag also contained women's clothing with the tags still attached, indicating they had never been worn.

Officers opened the two other bags Rocco alerted on and found more packaged marijuana. Officers then removed all the luggage from the baggage compartment except the three they knew had narcotics and lined them up against the wall. Officers asked the eighteen passengers, individually, to describe their bag, and asked for consent to search. Once a bag was cleared, it was moved to the lobby. After this process, one bag remained unclaimed and another unclaimed bag was located inside the passenger compartment. Thus, a total of five bags remained unclaimed and three passengers, without bags, said the bags did not belong to them. These three passengers, who were traveling together, included Swims, Sylvester McKenzie, and Anthony Smith. In the end, officers collected five bags with marijuana. The total street value of the marijuana was approximately $48,000.

Detective Cesar Guerra received a call from Officer Martinez after Rocco alerted on the three bags. Detective Guerra worked in the narcotics unit for the Grand Prairie police department. While at police academy, he was trained to identify marijuana, heroin, methamphetamine, and cocaine. He also had experience with drug trafficking and testified Grand Prairie was a key location for moving drugs from Mexico into the United States. Drug couriers typically transported drugs in buses because an individual could buy a ticket online or purchase with cash. Further, bags were not labeled, making it harder to identify which bags belonged to which passengers.

Detective Guerra talked to Swims at the scene. He asked Swims basic questions like where he was coming from and where were his bags. Swims was not forthcoming with his answers and changed his story several times. First, he said he came from Austin, but he later

−4−

said he traveled from Memphis, Tennessee to Houston. Swims first told officers the only bag he carried on the bus belonged to his cousin, McKenzie. This particular bag, the black duffel bag, contained approximately twenty-one pounds of marijuana. Swims later disclosed he had left a bag on the bus, and officers found a plastic Walmart bag with only a pair of size 40 jeans. Swims said he wore size 40 or 42 pants.

Another unclaimed bag contained marijuana and clothing in size 40-42. Swims told an officer, "Well, just because there's several, you know, shorts in that bag, that size doesn't mean that bag belongs to me." Detective Guerra thought the statement was suspicious because he had not finished unpacking all the items in the bag, yet Swims knew more than one pair of shorts was inside the bag. Detective Guerra also found Saran Wrap, dryer sheets, and toilet paper, which were commonly used in drug trafficking to conceal the smell of narcotics.

Lieutenant Ronnie Morris arrived at the bus station approximately an hour and a half into the investigation. Officers had already separated three individuals from the other passengers, one of which was Swims. Detective Guerra finished talking with Swims and then turned his focus to the bags. Lieutenant Morris said no one was watching Swims. He noticed Swims sitting straight, shaking his legs, rubbing his thighs, and looking around as if "he was looking for an escape route possibly to run." Based on his prior experience with suspects trying to flee, Lieutenant Morris moved next to Swims to make sure he did not try to run.

Detective Guerra interviewed Swims again after he was taken into custody. Swims said he carried the black duffel, which was his cousin's bag, but continued to deny any knowledge of the marijuana.

Detective Guerra testified Swims adamantly denied having anything to do with the marijuana, and Swims never claimed ownership of any bag containing marijuana. However, he testified Swims was arrested, rather than the other two men traveling with him, because of the

−5−

totality of the circumstances. Three credible witnesses identified Swims with the black duffel bag and "the affirmative links led to Mr. Swims."

The jury convicted Swims of possession of a useable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. The trial court, after finding two enhancement paragraphs true, sentenced Swims to thirty years' imprisonment. This appeal followed.

## Sufficiency of the Evidence

In his first issue, Swims argues the evidence is legally insufficient to support his conviction because the State failed to establish he had care, custody, or control of any of the marijuana found in the bags. The State responds the evidence is sufficient to support his conviction.

In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as the sole judge of witness credibility, is free to believe or disbelieve all or part of a witness's testimony. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses the substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) (West 2010). To prove unlawful possession of a controlled substance, the State must prove the accused exercised care, custody, control, or management over the substance, and the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether direct or circumstantial, the evidence must establish that the accused's connection with the controlled substance was more than just fortuitous. *Id*, at 405–06. Mere presence at a location where drugs are found is insufficient, by itself, to establish possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Further, when the

accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter,* 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either alone or in combination, to establish possession of contraband include: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) the accused being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) incriminating statements made by the accused when arrested, (7) an attempt to flee, (8) furtive gestures, (9) an odor of contraband, (10) the presence of other contraband or drug paraphernalia, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct indicating a consciousness of guilt, (15) the accused's incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) the accused's presence in a suspicious area under suspicious circumstances. *Evans,* 202 S.W.3d at 162 n.12. These are simply some factors which may circumstantially establish the sufficiency of the evidence to prove knowing possession. *Id.* However, no set formula of facts exists to dictate a finding of links sufficient to support an inference of knowing possession. *Taylor v. State,* 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The number of linking factors present is not as important as the logical force they create to prove the crime was committed. *Evans,* 202 S.W.3d at 162; *Taylor,* 106 S.W.3d at 831.

Here, Robinson and Simpson identified Swims as the man who handed off the black duffel bag containing approximately twenty-one pounds of marijuana. Robinson also said

Swims's cousin did not hand Swims the bag before Swims handed it to him. Swims had the bag the entire time and handed it directly to Robinson.

The smell of marijuana emanating from the black duffel bag was obvious to those in the immediate area. The bag was described as unusually heavy and the texture felt funny.

After officers arrived, both Mega Bus employees and officers noticed Swims moving around the compartment, cussing, and talking loudly. He moved back and forth to the bathroom, where officers later found marijuana. Lieutenant Morris testified Swims exhibited behavior of someone preparing to flee from the scene.

Some of the drugs were wrapped in pages of an Austin newspaper, the location Swims admitted recently visiting.

Swims gave inconsistent stories about his travel and whether he had any bags on the bus. He first said he did not have any bags, which officers found suspicious because Swims had traveled for several days between Tennessee and Texas. Swims then said he only carried on a Walmart bag with one pair of size 40 pants. However, two other bags with marijuana contained similar-sized clothing, and officers testified Swims seemed to know about the clothing in these bags before they finished looking through them.

Finally, Swims admitted to carrying the black duffel bag for his cousin, but he adamantly denied knowing the black duffel bag contained drugs. Given the testimony that the bag was heavy for its size, felt funny, and gave off a "loud odor," the jury could reasonably infer Swims knew the bag contained marijuana. Moreover, although the bag contained women's clothing, Detective Guerra explained this was a good tactic to "throw[ ] people off the scent if you're a male carrying a bag loaded with 22 pounds of marijuana . . . ."

Given Swims's possession of the suspicious black duffel bag emanating the obvious odor of marijuana, his inconsistent statements to police, his suspicious behavior on the bus after

officers arrived, his behavior indicating an attempt to flee, and his apparent knowledge of the contents of other bags containing marijuana, a jury could rationally find the logical force of the evidence established that Swims knowingly and intentionally exercised care, custody, and control over the marijuana in the black duffel bag. *See Evans*, 202 S.W.3d at 162. Thus, his connection with the bag was more than just fortuitous. *See Poindexter*, 153 S.W.3d at 405–06 (noting that whether evidence is direct or circumstantial, it must establish the accused's connection with the drugs was more than just fortuitous). Accordingly, considering the evidence in the light most favorable to the verdict, a rational trier of fact could have found Swims possessed a usable quantity of marijuana as charged in the indictment beyond a reasonable doubt. We overrule Swims's first issue.

## Law of the Parties Instruction

In his second issue, Swims argues the trial court erroneously instructed the jury on the law of parties. The State responds Swims was not harmed by the inclusion of the instruction because the evidence was sufficient to support his conviction individually. We agree.

The Texas Court of Criminal Appeals has held, "Even where proper objection is made at trial, we have held that where, as in the instant case, the evidence clearly supports a defendant's guilt as the primary actor, error in the charging on the law of parties is harmless." *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (citing *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)); *see also Davis v. State*, No. 05-14-00378-CR, 2015 WL 1542211, at *5 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (mem. op., not designated for designation). As detailed above, the evidence established Swims's guilt as the primary actor. Thus, Swims cannot establish egregious harm, as is required because Swims failed to object on this basis at trial. *See Cathey*, 992 S.W.2d at 466 (party must show egregious harm when he fails to object to charge). We overrule Swims's second issue.

–9–

## Admission of Evidence

In his remaining four issues, Swims argues the trial court abused its discretion by admitting (1) marijuana without proving the exhibits were in fact marijuana, (2) cell phone photographs, (3) an email, and (4) testimony from a Mega Bus employee about drug trafficking.

We review a trial court's ruling to admit evidence under an abuse of discretion standard. *Hull v. State*, 172 S.W.3d 186, 189 (Tex. App.—Dallas 2005, pet. ref'd). We reverse only when the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.*

We first address whether the trial court erred by admitting suspected marijuana without proving the exhibits were in fact marijuana. While Swims recognizes expert testimony is not necessary and an officer's testimony may be sufficient to identify marijuana, Swims argues Detective Guerra failed to specifically authenticate State's Exhibits 41-44. Further, he argues Nathaniel Stevens, a senior forensic scientist with Integrated Forensic Laboratories, did not authenticate the marijuana because he did not analyze the contents of State's Exhibits 41-44. Swims objected because Stevens did not test the substance, and "There's no weight, no analysis." The State responds the same evidence was admitted elsewhere without objection; therefore, error, if any, was harmless.

It is well-established "erroneously admitted evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010). In other words, error in the admission of evidence may be rendered harmless when substantially similar evidence is admitted elsewhere without objection. *See Rivon v. State*, No. 05-10-01417-CR, 2012 WL 1130274, at *1 (Tex. App.—Dallas Apr. 5, 2012, pet. ref'd) (not designated for publication).

Here, error, if any, was harmless. Without objection, Officer Martinez testified his K-9 partner Rocco alerted on a blue suitcase, a black bag, and the black duffel bag. He testified they "opened all three bags that he went to, and all of them had the package of narcotics, the evidence that's here before you." Officer Heymes also testified that after Rocco positively hit on the bags, they opened them and found marijuana. He further testified that after they completed the inventory of all the passengers' luggage, they found two more unclaimed bags that contained marijuana. Thus, Officer Heymes testified three suitcases and two bags containing marijuana were transported to the police property room for booking by narcotics detectives. Swims never objected to the officers' testimony identifying the contents of the bags as marijuana. In light of the unobjected-to testimony from the officers, we conclude error, if any, was harmless. *Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29. Accordingly, we overrule Swims's third issue.

In his fourth issue, Swims argues the trial court erred by admitting irrelevant cell phone photographs. The State responds his argument on appeal does not comport with his trial objection; therefore, he presents nothing for review. Alternatively, the State argues he failed to show harm.

During trial, the State offered, and the trial court admitted, Swims's cell phone. The cell phone was found in Swims's possession when he was taken into custody. The screen of the phone was cracked, but officers were able to download the contents of the phone, which included video footage and pictures of Swims on the bus. Officers suspected Swims broke the phone while on the bus.

The State offered the contents of the phone as State's Exhibit 38. Swims objected, "Your Honor, the relevancy of pictures of the defendant on a cell phone as to the - - this case." The

State argued the pictures placed Swims on the bus "possibly under suspicious circumstances breaking the phone just before he was detained." The court overruled the objection.

On appeal, Swims argues the admission of forty-three photographs from January and February of 2013 and sixteen photographs from March 1, 2013 to March 4, 2013 are irrelevant because they do not place him on the bus on the day of the incident, show him with any of the luggage seized, or connect him to any marijuana. At trial, Swims did not object to any specific photos or the lack of relevance based upon the dates the photos were taken. Further, he did not argue the photos were irrelevant because the pictures did not show him in possession of any luggage or marijuana. Accordingly, Swims failed to show how the admission of the photographs caused harm. Thus, error, if any, was harmless. *See* TEX. R. APP. P. 44.2(b). We overrule Swims's fourth issue.

In his fifth issue, Swims argues the trial court abused its discretion by overruling his relevancy objection and admitting an email sent from Detective Guerra to the State listing the weight and the approximate street value of marijuana in each bag. The State responds the same evidence came in elsewhere without objection. We agree.

Officer Martinez testified and confirmed, without objection, the amount of marijuana in each bag. Detective Guerra testified to the amount and approximate street value of bags 1, 4, and 5. Detective Guerra also testified the approximate street value of all the marijuana recovered totaled $48,000. In light of the unobjected-to testimony from these witnesses, we conclude error, if any, was harmless. *Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29 (noting any error was harmless in light of "very similar evidence" admitted without objection). Accordingly, we overrule Swims's fifth issue.

In his sixth issue, Swims argues the trial court abused its discretion by allowing Simpson to testify about drug trafficking. He argues Simpson was not qualified as an expert to testify

–12–

about the subject, and the testimony was irrelevant because the State charged him with possession of marijuana and not delivery of marijuana. In his brief, he argues "any evidence about drug trafficking was not relevant to any fact of consequence in this case." The State responds Swims failed to object to additional drug trafficking testimony from Simpson. We agree.

During the State's direct examination of Simpson, the State asked how it was apparent that people were working in groups to bring drugs through the bus route. Simpson answered, "People coming from different - - other different states bringing all kinds of drugs, trafficking through some of the routes." Swims then objected because Simpson was not qualified to answer questions about groups trafficking narcotics through the country. The trial court overruled the objection.

Simpson testified later, without objection, to how groups sometimes use "watch outs" to make sure the baggage ends up in the right location. He also explained, without objection, the routes generally used by traffickers. He said they travelled from Memphis, to Houston or San Antonio, through Dallas, and back to Memphis. On cross-examination, defense counsel asked Simpson if he saw Swims or anyone traveling with him acting as a lookout or acting suspiciously "because you described earlier people were on the lookout, these groups distributing drugs . . . ."

In addition to Simpson's unobjected-to testimony about drug trafficking, the jury heard testimony from Detective Guerra. He explained the DFW area was a key location for drug couriers, and the drugs were typically transported in buses.

Because an error in the admission of evidence is cured if the same evidence comes in elsewhere without objection, the general rule is that the party wishing to complain must continue to object each time the evidence is offered. *Moyer v. State*, 948 S.W.2d 525, 530 (Tex. App.—Fort Worth 1997, pet. ref'd). Here, Swims did not object when the State continued to ask

Simpson questions about drug trafficking. Further, Swims asked Simpson about drug trafficking on cross-examination. *See Allen v. State*, 761 S.W.2d 384, 387 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (noting that when the accused offers the same testimony as that objected to, the accused is not in a position to complain on appeal). He also failed to object to Detective Guerra's testimony about drug trafficking. Accordingly, error, if any, was harmless. *Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29 (noting any error was harmless in light of "very similar evidence" admitted without objection). We overrule Swims's sixth issue.

## Conclusion

Having overruled Swims's issues, we affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47
131411F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

TRACY SWIMS, JR, Appellant

No. 05-13-01411-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1330583-N.
Opinion delivered by Justice Bridges.
Justices Fillmore and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 13, 2015.

Tracy Swins JR 1886123
Estelle Unit
264 FM 3478
Huntsville, TX 77320

CLERK
5th Court of Appeals Dallas
600 Commerce St. #200
Dallas Texas 75202-4658

